STATE HIGHWAY COMMISSIONER *v.* GREEN.

1. Eminent Domain—Appeal and Error—Evidence—Easement Release—Cost of Moving House.

State highway commissioner's contention, on appeal from condemnation award to owner of farm and residence, that trial court erred in permitting condemnation commission to consider a 1931 easement release, under the terms of which the State had agreed to move the residence at its expense, if moving it became necessary, in their determination of damages, *held,* without merit, where the only argument presented to the trial court on the issue was that there never was a taking of the property on which the house stands.

2. Same—Measure of Damages—Before and After Test.

State highway commission's contention that the only proper measure of damages in a condemnation proceeding is the before and after test *held,* without merit.

3. Same—Measure of Damages—Constitutional Law—Just Compensation.

The only indisputable and ultimate test as to the measure of damages in a condemnation proceeding is that of "just compensation" as required by the Constitution (Const 1908, art 13, § 1).

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 545; 27 Am Jur 2d, Eminent Domain §§ 279, 293, 471.
[2] 27 Am Jur 2d, Eminent Domain §§ 266, 269.
[3] 27 Am Jur 2d, Eminent Domain §§ 266, 279.
[4] 27 Am Jur 2d, Eminent Domain §§ 266, 279, 406.
[5] 27 Am Jur 2d, Eminent Domain §§ 471, 472.
[6] 27 Am Jur 2d, Eminent Domain §§ 421–423, 426, 427.
[7] 27 Am Jur 2d, Eminent Domain § 293.
[8] 27 Am Jur 2d, Eminent Domain §§ 279, 281, 418.
[9, 10] 27 Am Jur 2d, Eminent Domain § 290.
Comment Note.—Determination in eminent domain proceedings of market value of land as affected by mineral deposits or similar conditions. 156 ALR 1416.
[11] 27 Am Jur 2d, Eminent Domain §§ 266, 267, 269, 279, 281, 285, 290, 293.

4. Same—Court of Appeals—Measure of Damages—Just Compensation.

The Court of Appeals cannot dictate the particular formula to be used by the commissioners in a condemnation proceeding in arriving at the award the commissioners deem to constitute "just compensation" (Const 1908, art 13, § 1).

5. Same—Court of Appeals—Evidence—Award.

The Court of Appeals will not interfere on appeal with the award of damages of condemnation commissioners that is clearly within the range of the evidence offered.

6. Same—Measure of Damages—Evidence—Special Damages—Valuable Trees.

A condemnation commission may take testimony concerning special items of damage such as loss of valuable trees, or evidence tending to show that a taking has left the remaining portion of property inaccessible or undesirable.

7. Same—Right-of-Way—Cost of Moving House.

A condemnation commission may consider evidence to show the cost of moving a house back from the proposed highway right-of-way when the location of the house has been rendered undesirable by having the front yard replaced by the right-of-way.

8. Same—Instructions—Evergreen Trees—Value.

It was not error for trial court to instruct condemnation commission, in proceeding to condemn a tract containing immature evergreen trees, that it could calculate the value of the trees on a per unit basis.

9. Same—Condemnation of Minerals—Measure of Damages.

Damages for condemnation of right to remove minerals is measured by their value in place.

10. Same—Market Price of Minerals Taken—Occasional Demand.

Occasional local demand for minerals from contractors and county road commission is sufficient to establish a general market price in the area for purpose of assessing damages in a condemnation proceeding, even though there is no commercial exploitation of the material.

11. Same—Appeal and Error—Measure of Damages.

It was not error for the commission in a proceeding to condemn a tract containing a borrow pit, the front yard of a residence, and a quantity of trees, to consider separately in arriving at

a measure of damages the cost of moving the residence, the value of the borrow materials taken, and the value per unit of the trees destroyed, rather than to adhere strictly to the before and after value test.

Appeal from Alpena; Glennie (Philip J.), J.  Submitted Division 3 October 7, 1966, at Grand Rapids. (Docket No. 957.)  Decided January 10, 1967.

Condemnation petition on behalf of the State Highway Commissioner against Hugh E. Green and Edna G. Green.  Award of condemnation confirmed. Petitioner appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso,* Assistant Attorney General, and *Thomas D. Stone,* Special Assistant Attorney General, for plaintiff.

*Donald K. Gillard (Richard E. Meden,* of counsel), for defendants Green.

FITZGERALD, J.  In the widening and improvement of highway M–32 in 1963, it became necessary for appellant to take 3.1 acres of the Green's 120-acre farm.  Of the 3.1 acres, 3 acres were already subject to a 1931 easement similar to those in *State Highway Commissioner* v. *Flanders (Same* v. *English)* (1966), 5 Mich App 572.

The taking brought the new right-of-way line 6 feet closer to appellee's house and a foot or 2 from his front steps.  During the period of highway construction, the taking included a temporary right to enter upon a 15-acre site and remove borrow material along a haul road covering 3.8 acres.  In removing 60,000 cubic yards of sand and topsoil, appellees destroyed roughly 5 acres of young Christmas trees.

Before the court commissioners, the State offered expert testimony to show that the value of the entire property was $21,120 before the taking and $19,089 after the taking. The difference of $2,031 was argued to be full compensation.

The landowner's expert real-estate appraiser testified that the Greens had suffered a total of $10,946.50 in damages calculated as follows:

| | |
|---|---:|
| 1/10 of additional right-of-way taken | $    12.50 |
| Conversion of old right-of-way easement to fee | 50.00 |
| Cost of moving house | 4,384.00 |
| Loss of trees (approximately) | 3,500.00 |
| 60,000 cubic yards of sand, et cetera, at 5¢ per cubic yard | 3,000.00 |
| Total | $10,946.50 |

The trial court instructed the commissioners as follows:

"The first instruction is in connection with the Christmas trees because I believe this is the only case in which there were any trees. Now, the instruction of the court in this particular case is that you will treat it in the same manner as you treat the gravel or the sand.

"In other words, on a unit value. You will use the same yardstick. So in that connection I charge you that you will use the same yardstick in determining the loss in connection with the Christmas trees; in other words, on a unit value. And so you will find in that connection that the amount of the owner's loss or the amount that would make him whole would be the number of trees as multiplied by the cost per tree.

"Now, you have the testimony before you by the various witnesses as to the number, and so you have that in mind. And also the cost as testified

to by the various witnesses. So that is the instruc-
tion of the court relative to the trees.

"I also charge you that in connection with the
building—on the chart we have referred to it many
times during the testimony as 'A'. You will recall
that. And we have in the Green case the same
situation we had in the *Flanders* and the *English
Cases* where there was a covenant in connection with
the deed, and you will recall my instructions in
connection with the covenant and the breach thereof.
So I won't need to go into that again.

"The question here in order to do adequate justice
in the face of this covenant is what damages should
be awarded in the face of the testimony that you had
before you in this case. It raises this question:
Should the owner be entitled under these circum-
stances to have his residence moved back so that he
would be in the same position to the highway as
it was before the condemnation? I charge you that
in this case that the evidence disclosing that the
right-of-way has been taken right up to the front
of the house so that the entire front yard has been
destroyed; that in this connection that it would
amount to a violation of that covenant in the deed.

"And so in this case the violation of the covenant
having been effected, then you could arrive at dam-
ages in several ways except that the only testimony
you have in this case is the testimony by the property
owner that he would be made whole by moving the
property back a number of feet. And you have the
cost in that connection of moving it back. So you
may take that into consideration in arriving at your
decision in this case: The cost of moving and asking
[making?] the landowner whole. * * *

"I charge you that there would be another method
of determining damages if there had been the testi-
mony before you, before and after, where the prop-
erty had been depreciated by the fact that the front
yard had been taken away, but we haven't any testi-
mony in that respect, so you will be limited to the

testimony that you have here given by the property owner.

"Now, I have also been requested by the State to ask you to make individual findings. So in connection with the Green case you will make individual findings as to the amount of the borrow, the damages for the borrow. Secondly, individual findings as to the damages for the loss of the trees. And third an individual finding in connection with the damages to the property by reason of the fact that the State exercised its right in taking the fee right up to the edge of the home. So you will make individual findings in each case and report them in that respect."

The commission's award of $10,630 was confirmed by the trial court. The appellant asks that the award be set aside and a new condemnation proceeding instituted.

Upon appeal, one issue worthy of consideration is raised: Is the only proper measure of damages the before-after test or could the commissioners be allowed to consider separately the cost of moving the house, the value of the borrow material taken, and the value per unit of the trees destroyed?

The only argument that the appellant presented to the trial court to raise an issue concerning the relevance of the 1931 easement agreement is that there was never a taking of any property upon which the house stands. It does not follow, however, that for this reason the 1931 agreement does not apply in this case. We do not feel compelled to find reversible error in the court's instructions relating to the 1931 agreement on this ground. Other arguments on this particular issue were either not presented to the trial court or are not argued on appeal.

The only question then, regarding the cost of moving the house, is whether considering it as a distinct element in the measure of damages was proper. Appellant cites no Michigan authority for

his contention that the before-after test is the only proper measure of damages. The only indisputable and ultimate test as to the measure of damages is that of "just compensation" as required by our Constitution.* This Court cannot dictate the particular formula to be used by the commissioners in arriving at the award the commission deems to constitute "just compensation". Nor will this Court interfere with such an award that is clearly within the range of the evidence offered. See the *English* and *Flanders Cases, supra,* citing *In re Widening of Michigan Avenue, Roosevelt to Livernois (Parcel 68)* (1937), 280 Mich 539; *In re Widening of Michigan Avenue, Fourteenth to Vinewood (Parcel 90)* (1941), 298 Mich 614; *In re Widening of Michigan Avenue (Rott's Appeal)* (1941), 299 Mich 544.

In *In re State Highway Commissioner's Petition* (1944), 310 Mich 93, 99, the Court qualifies the strict application of the before-after test by saying that "We do not hold that it is universally improper to take testimony which will disclose more in detail special items of damages, such as loss of valuable trees, leaving remaining portions of property inaccessible or undesirable, *et cetera (Page* v. *Wells,* 37 Mich 415)."

It is patent that when one's front yard is replaced by a right-of-way, the location of the house is thereby rendered undesirable, and the commission may consider evidence to show the cost of moving the house back from the right-of-way.

With regard to the loss of trees as a separate element in the measure of damages the same four cases cited, *supra,* establish that such a method of calculation is not improper. In view of *Department of Conservation* v. *Connor* (1947), 316 Mich 565, which holds that stumpage must be valued as it

---

* See Const 1908, art 13, § 1.—REPORTER.

stands at the time of taking, calculation of the value of trees on a per unit basis would appear to be the most precise method; in any event, we cannot hold it to be an erroneous method of calculation as a matter of law.

Nor can we find error in the commission's separate valuation of the borrow material taken under temporary easement. Again, appellant cites no Michigan authority for his position. In *State Highway Commissioner* v. *Fegin* (1966), 2 Mich App 698 at 703–705, the Court holds:

" 'In view of the character of the only right which the county is permitted to condemn, we are of the opinion that the evidence should have had a more direct bearing upon the quantity and the value of the gravel in its natural bed and that the court should have instructed more with reference to that value than to the market value of the land itself.' * * *

"We think the correct rule regarding condemnation of land containing valuable mineral deposits may be summed up as follows: * * *

"If the right to remove minerals is condemned their value in place must be established to fix the damage. * * *

"We do not believe it is necessary to establish that a market exists warranting commercial exploitation of the materials. We deem it sufficient to say that if occasional demand from the contractors, and county road commission has established a general price in the area, there is a market apart from that created by the project itself.

"The appellee's appraiser testified that from both open pits and from pits they opened up whoever bought sand in this area paid 3¢ per yard and up. This is enough."

This case controls not only the issue of the separate consideration of the value of the borrow material,

but also the issue of speculation concerning the existence of a market.

We find no reversible error. The confirmation of the award is affirmed, with costs to appellee.

BURNS, P. J., and T. G. KAVANAGH, J., concurred.