COUNTY OF MUSKEGON v BAKALE

Docket No. 47533. Submitted June 2, 1980, at Grand Rapids.—Decided February 4, 1981.

The County of Muskegon condemned certain lands for a county sewage disposal system. John Bakale and his wife, Myrtle, owned or leased some of this property and used it for the purpose of growing Christmas trees for commercial sale. Defendants Bakale appeal from a judgment of the Muskegon Circuit Court, R. Max Daniels, J., which awarded them compensation in the amount of $24,742.88 as the value of the trees in addition to $23,000 as the value of the land. Defendants contend that the trial court erred by estimating the value of the trees to be the amount by which their presence increased the property's fair market value which, in turn, would be arrived at by determining the value of the trees on the stump. Defendants further contend that the correct method of appraisal would be to determine the expected sale at the time of harvest and subtract from that figure the cost of producing and marketing the trees. *Held:*

Damages will not be allowed in condemnation cases unless they can be proven with reasonable certainty. Defendants' ascertainment of damages would be too speculative under the facts of this case. The trial court used the appropriate measure of damages and the award was fair and just.

Affirmed.

1. EMINENT DOMAIN — CONDEMNATION — NATURAL PHYSICAL ASSETS — VALUATION.

Natural physical assets located on condemned land generally are not valued separately from the land.

2. EMINENT DOMAIN — CONDEMNATION — DAMAGES.

Damages will not be allowed in condemnation cases unless they can be proven with reasonable certainty.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 27 Am Jur 2d, Eminent Domain § 279.
Measure of damages for injury to or destruction of shade or ornamental tree or shrub. 95 ALR3d 508.
[2, 3] 27 Am Jur 2d, Eminent Domain §§ 427, 437.
[4] 27 Am Jur 2d, Eminent Domain § 471.

3. Eminent Domain — Condemnation — Measure of Damages.

> A trial court correctly applied the appropriate measure of damages in a case involving the condemnation of land upon which Christmas trees were being grown for commercial sale by estimating the value of the trees to be the amount by which their presence increased the property's fair market value which, in turn, would be arrived at by determining the value of the trees on the stump and not by determining the expected sale at the time of harvest and then subtracting from that figure the cost of producing and marketing the trees.

4. Eminent Domain — Condemnation — Appeal.

> An award in a condemnation case will not be set aside so long as it is within the range of competent appraisals presented by witnesses at trial.

*White, Spaniola, Knudsen, Stariha & Potuznik, P.C.,* for plaintiff.

*Scholten & Fant,* for defendants on appeal.

Before: R. B. Burns, P.J., and MacKenzie and J. T. Kallman,* JJ.

MacKenzie, J. Defendants-appellants appeal by right from a judgment awarding them compensation in the amount of $24,742.88 for certain Christmas trees located on lands condemned by the County of Muskegon for a county sewage disposal system under the authority of MCL 213.361-213.391; MSA 8.261(1)-8.261(31).

Defendants owned or leased certain land in Muskegon County upon which were located trees grown for commercial sale as Christmas trees. The value of defendants' land without the Christmas trees was not contested and had a stipulated value of $23,000.

The sole issue on appeal concerns the method of valuing the marketable Christmas trees growing

---

* Circuit judge, sitting on the Court of Appeals by assignment.

on the property at the time of condemnation. The plaintiff contends that the trees should be valued by estimating the amount by which their presence increased the property's fair market value. This amount would be arrived at by determining the value of the trees on the stump. The defendants argue that the proper method of valuation of these trees would be to determine the expected sale at the time of harvest and subtract from that figure the cost of producing and marketing the trees.

The compensation method proposed by plaintiff has been used by courts to determine the value of natural physical assets located on condemned land. Generally, these assets will not be valued separately from the land. This was stated at 27 Am Jur 2d, Eminent Domain, § 279, p 69, as follows:

"Where land taken in eminent domain has valuable deposits of minerals, or contains sand, gravel, peat, or other materials of value, or has on it growing crops, shrubbery, or trees capable of being converted into lumber, these circumstances may be considered so far as they affect the market value of the land; but part of the realty cannot as a rule be separately valued for its materials, trees, etc., as an item additional to the value of the land for the purpose of sale."

See also 4 Nichols, Eminent Domain (3d ed), § 13.2 and § 13.21, *Cross v State,* 320 NYS2d 625 (S Ct, 1971), *White v Natural Gas Pipeline Co of America,* 444 SW2d 298 (Tex, 1969).

Under plaintiff's theory, the Christmas trees would be treated like ore or mineral deposits and compensation would be based on the increased value of the land due to their value "in place". In Michigan, this method has been used in cases involving valuation of timber standing on condemned property. *Dep't of Conservation v Connor,*

316 Mich 565; 25 NW2d 619 (1947), *State Highway Comm'r v Green,* 5 Mich App 583; 147 NW2d 427 (1967).

In *Green, supra,* 586, 589-590, a trial court had instructed the jury on the proper method for valuing condemned trees as follows:

" 'I charge you that you will use the same yardstick in determining the loss in connection with the Christmas trees; in other words, on a unit value. And so you will find in that connection that the amount of the owner's loss or the amount that would make him whole would be the number of trees as multiplied by the cost per tree.' "

On appeal, this Court upheld that instruction as proper, stating:

"In view of *Dep't of Conservation v Connor* (1947), 316 Mich 565, which holds that stumpage must be valued as it stands at the time of taking, calculation of the value of trees on a per unit basis would appear to be the most precise method; in any event, we cannot hold it to be an erroneous method of calculation as a matter of law."

While the trees in *Green* were described as "Christmas trees", the court's valuation formula was based solely on the trees' value as ordinary timber. The valuation method urged by defendants has been referred to as the tortious destruction of crops method. *United States v 576.734 Acres of Land, More or Less, In Montgomery County, Pa,* 143 F2d 408 (CA 3, 1944). It has generally been applied in cases where agricultural crops have been destroyed prior to reaching a mature, harvestable state. Defendants argue that because Christmas trees are cultivated and cared for in a manner similar to growing crops, they had a right

to receive compensation in an amount equal to the trees' projected market value at the time of harvest and not merely for their stumpage value at the time of taking.

Damages will not be allowed in condemnation cases unless they can be proven with reasonable certainty. *Board of Education of City of Grand Rapids v Baczewski,* 340 Mich 265; 65 NW2d 810 (1954). The loss of speculative profits, therefore, has been held not to be allowable as an element of compensation. *In re Grand Haven Highway,* 357 Mich 20; 97 NW2d 748 (1959), *City of Lansing v Wery,* 68 Mich App 158; 242 NW2d 51 (1976). In *Connor, supra,* 588, a case involving the valuation of timber, the Court stated:

"Appellants claim that the jury did not follow the judge's instructions in determining the just compensation by finding the value of the stumpage through the process of ascertaining the value of the lumber manufactured at the sawmill and then deducting the costs of manufacture, et cetera. In this regard, the judge's charge to the jury was far more favorable to defendants than they were entitled to. The question was what the stumpage was worth, not what it would be worth if and when converted into lumber at defendants' sawmill, or what would be realized for the lumber if sold for packing cases or other lumber products to the government or any other purchaser. This would be entirely too speculative and remote. The testimony in the instant case showed the great uncertainties in the lumber market and that at times the lumber business had been very unprofitable."

We find that the trial court employed the appropriate evaluation method in this case and did not err in refusing to utilize the tortious destruction of

crops theory under the facts and circumstances of this case.

Defendants' ascertainment of damages would be too speculative under the facts of this case. Defendants' estimate of their gross sales price was based upon an assumption that all the marketable trees counted by the Department of Agriculture would be sold. However, there was testimony from plaintiff's experts that many of the trees designated as marketable by the inspectors were of a size or quality which would render them difficult to sell. There was also testimony that ordinary risks of disease, insects, fire, and the collectibility of debts may have prevented defendants from realizing a profitable harvest. In fact, there was evidence that some of defendants' marketable spruce trees were killed by frost in July of 1972.

Defendants did not establish with sufficient certainty the sales price the Christmas trees would have brought if they had been harvested and sold in the 1972 season. Industry prices were not available for defendants' grade two trees and where they were available they were not consistently applied to value the trees. Contrary to defendants' assertion, there was a market value for the trees at the time of taking. This was their value as commercial Christmas trees growing on the land. This figure was determined with substantial certainty by plaintiff's experts, and avoided the problems of speculation encountered under defendants' theory. We, therefore, conclude that the trial court used the appropriate measure of damages in the instant case.

We further find that the award was fair and just. An award in a condemnation case will not be set aside as long as it is within the range of competent appraisals presented by witnesses at

trial. *Connor, supra, Detroit Board of Education v Clarke,* 89 Mich App 504; 280 NW2d 574 (1979), *Detroit v Sherman,* 68 Mich App 494; 242 NW2d 818 (1976). At trial, witnesses presented widely differing opinions as to the value of the property at the time of taking. This testimony ranged from a valuation of approximately $15,000 to a valuation by defendant Bakale of $50,000. The court's decision to award defendants damages in the amount of $24,742.88 was clearly within the range of this testimony and should be affirmed on appeal.

Affirmed with costs to plaintiffs.