## STATE HIGHWAY COMMISSION v GREAT LAKES EXPRESS COMPANY

1. EMINENT DOMAIN—EASEMENTS—BRIDGES—DAMAGES.

A finding that a declaration of taking for an easement for a bridge approach divested defendant of the right to build utilities through the easement, thus causing additional damages to defendant because of the added expense of servicing the property north of a bridge, was not clearly erroneous where the declaration of taking described the easement condemned as perpetual and exclusive, extending under, over, and across the horizontal location, and defendant and its successors were forever bound not to build or permit others to build structures or other improvements on the horizontal location section of the easement with the exception of surfacing the parking areas.

2. EMINENT DOMAIN—PLEADING—DISCRETION.

A trial court did not abuse its discretion in a condemnation proceeding by denying plaintiff's motion to amend its declaration of taking for an easement for a bridge approach where plaintiff's motion to amend came 10 days after the jury had been sworn and 21 months after the plaintiff's rights in the easement had vested under a statute (MCLA 213.369).

3. EMINENT DOMAIN—VALUE—ELEMENTS—SPECIAL USES.

The adaptability of land sought to be taken in eminent domain for a special purpose or use may be considered as an element of value.

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am Jur 2d, Eminent Domain §§ 173–176.
  27 Am Jur 2d, Eminent Domain §§ 254, 288, 322–324.
[2] 27 Am Jur 2d, Eminent Domain § 398.
[3] 27 Am Jur 2d, Eminent Domain §§ 281, 282.
[4] 26 Am Jur 2d, Eminent Domain §§ 136, 137, 175, 199–202.
[5] 27 Am Jur 2d, Eminent Domain §§ 408, 506.
[6] 27 Am Jur 2d, Eminent Domain § 406 *et seq.*
[7, 8] 27 Am Jur 2d, Eminent Domain §§ 297, 298.
  Interest on damages for period before judgment for injury to, or detention, loss, or destruction of, property. 36 ALR2d 337.

4. EMINENT DOMAIN—EASEMENTS—AERIAL EASEMENTS—BRIDGES.

The effect of an aerial easement on defendant's property was admissible for the purpose of assessing after-value in the eyes of a prospective purchaser in the market place where a condemnation involved the taking for the construction of an approach to a bridge of a three-dimensional aerial easement of approximately 2-1/2 acres on defendant's approximately 32-acre parcel improved for a freight terminal.

5. EMINENT DOMAIN—JURY QUESTION—RELOCATION OF BUSINESS—EASEMENTS—BRIDGES.

The determination of whether relocation of a defendant's business was necessary in a situation where none of defendant's facilities had been physically damaged in a proceeding in eminent domain by a taking for the construction of an approach to a bridge of a three-dimensional aerial easement of approximately 2-1/2 acres of an approximately 32-acre parcel improved for a freight terminal was for the jury.

6. EMINENT DOMAIN—CONSTITUTIONAL LAW—JURY TRIAL.

The provisions of the Michigan Constitution that the right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law and that in all civil cases tried by 12 jurors a verdict shall be received when 10 jurors agree, does not mandate a jury trial in condemnation cases (Const 1963, art 1, § 14).

7. INTEREST—STATUTES—JUDGMENT—EMINENT DOMAIN.

The imposition of statutory interest on a money judgment recovered in a civil action is mandatory; the purpose of interest on a condemnation award is to provide the condemnee with just compensation for that which has been taken (MCLA 600.6013).

8. EMINENT DOMAIN—CONTRACTS—INTEREST.

A possession and use agreement must be construed as a waiver by a plaintiff effecting an acceleration of the date at which statutory interest was to begin where in return, plaintiff was granted certain rights of possession and use in the easement in advance of the taking by condemnation; where under the agreement, the plaintiff was given the immediate right of possession for survey and construction purposes, plaintiff agreed to pay defendant an advance of $101,000 against a future settlement or jury award, and as compensation for defendant's loss of the use of its land from and after a certain date, which was before the date a petition for condemnation of the easement was filed, defendant was entitled to interest on

the amount by which the award exceeded the amount advanced.

Appeal from Saginaw, Fred J. Borchard, J. Submitted Division 3 June 6, 1973, at Lansing. (Docket No. 12453.) Decided October 30, 1973.

Petition for condemnation by the State Highway Commission against Great Lakes Express Company, Michigan National Bank, and Norwalk Truck Lines. Judgment of condemnation for plaintiff. Plaintiff appeals the amount of damages awarded. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso,* Assistant Attorney General, and *Thomas D. Stone,* Special Assistant Attorney General, for plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *George L. De Wit),* for defendant.

Before: HOLBROOK, P. J., and DANHOF and ADAMS,* JJ.

DANHOF, J. This condemnation lawsuit involves the taking of a three-dimensional aerial easement of approximately 2-1/2 acres from the Great Lakes Express Company (hereinafter referred to as defendant). The easement was used for the construction of an approach to a bridge over the Saginaw River as part of I-675, the business route that passes through the City of Saginaw. The bridge structure, approximately 30 feet above ground level as it crosses defendant's property, is supported by a series of piers and columns.

Defendant's parcel of land consists of approxi-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mately 32 acres somewhat irregularly shaped. To the south, the property fronts for some 700 feet along Davenport Street. To the east, there are approximately 730 feet of frontage on the Saginaw River. To the west, the property borders for approximately 1000 feet a railroad right-of-way.

The bridge runs east and west across the property with the south line of the easement being approximately 450 feet north of the south line of the parcel as it fronts on Davenport Street. Between the bridge and Davenport Street, there lies approximately eight acres which are fenced and mostly covered by pavement. Various improvements are located thereon, all used in connection with the trucking business operated by defendant. These improvements consist in part of an office structure which fronts on Davenport Street. Attached to the office and extending north is an "I" shaped trucking terminal with 40 vehicle bays for loading and unloading freight. Other improvements consist of a large maintenance and repair garage and an employee parking lot. The closest buildings to the bridge pillars were the garage (76 feet) and the terminal (96 feet).

On March 31, 1967, a possession and use agreement was entered into between plaintiff and defendant in anticipation of the condemnation of the easement. By the agreement, defendant conceded the issue of necessity for the taking. Plaintiff was given the immediate right of possession for survey and construction purposes. The agreement established the location of the easement, but left open the respective rights of the parties in the specific area taken. Plaintiff agreed to pay defendant an advance of $101,000 against a future settlement or jury award. As compensation for defendant's loss of the use of its land from and after March 31,

1967, defendant was entitled to interest on the amount by which the award exceeded the amount advanced. The interest rate was 5% and was to run from the date of the agreement to the date of the award, judgment, or settlement.

On May 22, 1968, a petition for condemnation of the easement was filed in the circuit court pursuant to MCLA 213.361 *et seq;* MSA 8.261(1) *et seq.* An advance of the estimated compensation of $101,715 was paid on August 12, 1968. Trial began on March 9, 1971. Testimony and argument consumed 20 court days. After deliberating for more than three days, the jury returned a verdict in the amount of $559,537. Judgment confirming the verdict was entered on April 22, 1971. Plaintiff's petition to amend the judgment and motion for a new trial were denied. Plaintiff appeals raising numerous issues of law and fact.

Plaintiff argues that the trial court erred by interpreting the declaration of taking as divesting defendant of the right to build utilities (sewer, water, etc.) through the easement, thus causing additional damages to defendant because of the added expense of servicing the property to the north of the bridge. We do not feel that the trial court's finding in this regard was clearly erroneous. The declaration of taking described the easement condemned as perpetual and exclusive, extending under, over, and across the horizontal location. The lower vertical limit of the three-dimensional easement was "to whatever depth below bottom of pier footing elevations it is necessary to drive piling". Defendant and its successors were forever bound not to "build or permit others to build structures or other improvements on the horizontal location section of said easement with the exception of surfacing for the parking areas".

The trial court construed this taking as permitting the plaintiff to make use of every power within the stated purpose of the declaration whether now or in the future. Although the declaration is silent regarding utilities, it is subject to various interpretations. These proceedings conclude, defendant is forever barred from claiming additional compensation. Neither defendant nor its possible successors in interest should be forced into a position of reliance on "an unenforceable and an indefinite promise made by the State" that it would not make use of every one of the quantum of rights it had arguably taken. *In re State Highway Commissioner,* 256 Mich 165, 169; 239 NW 317, 318 (1931).

Plaintiff argues that, even if the trial court's construction of the declaration of taking was correct, plaintiff should have been allowed to amend the declaration so as to allow defendant the right to build utilities through the easement. MCLA 213.380; MSA 8.261(20) permits amendments "whenever the amendment will not interfere with the substantial rights of the parties." Plaintiff's motion to amend came some 10 days after the jury had been sworn and some 21 months after the plaintiff's rights in the easement had vested under MCLA 213.369; MSA 8.261(9). We hold that it was not an abuse of the trial court's discretion, at this late date of the proceedings, to deny plaintiff's motion to amend its declaration.

Plaintiff claims that the testimony of defendant's experts in regard to value before and after the taking was erroneous and should not have been admitted. We do not agree. It appears from the record that both plaintiff's and defendant's experts agreed that the use of the subject property as a terminal and repair garage for a major trucking concern was the highest and best use before

the taking. That an appraiser can take such special adaptability of existing facilities into consideration is specifically supported by *In re Grand Haven Highway,* 357 Mich 20, 27–28; 97 NW2d 748, 751–752 (1959):

"Nedeau based his judgment on the special nature of the buildings and that there was economic justification for their existence. He was justified in so doing, and in support thereof we quote from 18 Am Jur, Eminent Domain, § 247, p 885, as follows:

" 'The adaptability of the land, sought to be taken in eminent domain, for a special purpose or use may be considered as an element of value. If the land possesses a special value to the owner which can be measured in money, he has the right to have that value considered in the estimate of compensation and damages.

" 'While market value is always the ultimate test, it occasionally happens that the property taken is of a class not commonly bought and sold, as a church or a college or a cemetery or the fee of a public street, or some other piece of property which may have an actual value to the owner, but which under ordinary conditions he would be unable to sell for an amount even approximating its real value. As market value presupposes a willing buyer, the usual test breaks down in such a case, and hence it is sometimes said that such property has no market value. In one sense this is true; but it is certain that for that reason it cannot be taken for nothing. From the necessity of the case the value must be arrived at from the opinions of well-informed persons, based upon the purposes for which the property is suitable. This is not taking the "value in use" to the owner as contradistinguished from the market value. What is done is merely to take into consideration the purposes for which the property is suitable as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which in a general sense may be said to be the market value.' "

Furthermore, there was ample testimony which if

believed by the jury established the fact that the
terminal was of inadequate size to handle the
volume of freight existing as of the taking. There
was also evidence that defendant had formulated
plans to expand its existing facility, but that these
plans had been frustrated by the placement of the
easement. Both sides had access to, and gave some
consideration to, the studies of engineering and
transportation experts on the need for expansion.
Thus, the effect of the aerial easement on defend-
ant's property was admissible for the purpose of
assessing after value in the eyes of a prospective
purchaser in the market place. As was stated in *In
re Grand Haven Highway, supra,* at 28–29; 97
NW2d at 752:

"This Court has repeatedly construed what is meant
by the words 'just compensation' and has steadfastly
held to the holdings in *In re Petition of Rogers,* 243
Mich 517 [220 NW 808 (1928)], that while, in condemna-
tion proceedings, the landowner must yield to public
necessity, he should receive just compensation and that
this means at no sacrifice, and in *In re Widening of
Bagley Avenue,* 248 Mich 1, 5 [226 NW 688 (1929)], that
'Nothing can be fairly termed just compensation which
does not put the party injured in as good a condition as
he would have been if the injury had not occurred.'

"The commissioners were not bound by formula in
determining damages, as is disclosed in *In re Widening
of Gratiot Avenue,* 294 Mich 569 [293 NW 755 (1940)],
wherein we held that the determination of value in
condemnation proceedings is not a matter of formula or
artificial rules but of sound judgment and discretion
based upon a consideration of all relevant facts in a
particular case.

"In a recent decision, *In re Civic Center (Detroit v D
& C Nav Co),* 335 Mich 528 [56 NW2d 375 (1953)], we
established the following principles:

" 'A jury's award in condemnation proceedings may
not be disturbed by the Supreme Court unless palpably
contrary to the evidence, the province of the Court

being to review the evidence to see that the finding is supported thereby.'

" 'The jury in a condemnation case is the judge of the credibility of the witnesses and the truthfulness of their statements.'

" 'The jury in a condemnation case hears the testimony, examines the property, considers' the estimates placed upon the damages which should be awarded to the respective parties and makes the final determination.' "

See also *State Highway Commissioner v Flanders,* 5 Mich App 572, 579; 147 NW2d 441, 445–446 (1967); *State Highway Commissioner v Green,* 5 Mich App 583, 589; 147 NW2d 427, 429–430 (1967).

Plaintiff further argues that the trial court erred reversibly in admitting testimony on certain items of special damages claimed by defendant. We disagree. Defendant's summary of its total damages based on the estimates of two experts was as follows:

| | | |
|---|---|---|
| Damage to Land and Buildings | $862,000 to | $882000 |
| Fixture Damages | 67,468 | (67,468) |
| Business Interruption Damages | 38,312 | (38,312) |
| Costs to Rehabilitate and Restore | 322,309 to | 371,309 |
| Total Range of Damages | $1,290,089 to | $1,359,089 |

The last three items of claimed damages, *i.e.,* fixture damages, business interruption damages, and rehabilitation costs, were submitted on the basis of studies and expert testimony to the effect that the location of the easement frustrated needed expansion of the terminal facilities. This testimony tended to show that the taking made it necessary for defendant to relocate its entire business. It was for the jury to decide whether relocation was necessary in this situation where none of

defendant's facilities had been physically damaged by the taking. *In re Widening of Michigan Ave, Roosevelt to Livernois*, 280 Mich 539, 552; 273 NW 798, 803 (1937):

"The jury in a condemnation case is, as in other cases, the judge of the credibility of the witnesses and the truthfulness of their statements. The jurors hear the testimony, examine the property, consider the estimates placed upon the damages which should be awarded to the respective parties, and make a final determination. Like any other tribunal which is created for the determination of disputed questions of fact, their determination is final and this court may not disturb it so long as it is within the fair range of the testimony and of the facts which the jury may have learned in their examination of the property."

Moreover, the jury's award of $559,537 was more than $300,000 less than defendant's claimed damages to land and buildings alone.

Plaintiff claims that the trial court erred reversibly by instructing the jury that its verdict was to be unanimous. We grant that there was error in the trial court's instruction, but decline to reverse on this ground alone. At the time of trial, 1970 PA 118 had amended MCLA 600.1352; MSA 27A.1352 so as to abolish the 12-member jury in civil cases and to substitute a 6-member jury. However, as of the date of trial, under MCLA 600.1350; MSA 27A.1350, it was still within the discretion of the trial court to select and empanel a jury in a condemnation case according to the statute under which the proceedings had been instituted.[1] Both parties agreed before trial to have the jury selected under the condemnation statute. MCLA

---

[1] By 1972 PA 69 effective March 3, 1972, condemnation cases tried by jury must be tried by a six-member panel. MCLA 600.1350; MSA 27A.1350, MCLA 600.1352; MSA 27A.1352.

213.375; MSA 8.261(15) provides for a jury of 12 freeholders. Under MCLA 213.377; MSA 8.261(17), the 12-member jury is to render its verdict "in the same manner as on the trial of an ordinary civil case". Thus, while there existed at the time of trial statutory guidance to the effect that a verdict received from 5 of 6 jurors was to be the verdict of the jury, the Legislature had repealed a comparable provision relating to the number of jurors who must agree in a 12-member jury. Likewise, GCR 1963, 512.1 was, absent stipulation, inapplicable to the unanimity issue in regard to 12-member juries.

It was in this confusing state of statutory flux that the trial court instructed the jury that its verdict was to be unanimous. Const 1963, art 1, § 14 seems to have been overlooked:

"The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law. In all civil cases tried by 12 jurors a verdict shall be received when 10 jurors agree."

We note that art 1, § 14 was not cited by plaintiff as authority in its request to charge, in excepting to the instruction given by the court, or in the argument on the motion for a new trial.

Defendant argues that Const 1963, art 1, § 14 has no application because it has been held that there is no constitutional right to a jury trial in condemnation cases. *Chamberlin v Detroit Edison Co,* 14 Mich App 565; 165 NW2d 845 (1968); *Hill v State Highway Commission,* 382 Mich 398; 170 NW2d 18 (1969). However, these cases passed among other issues, on the constitutionality of a condemnation proceeding brought under a statute or in a forum which did not provide for a jury. They differ from the case at bar where the statute

did provide for a jury of 12 whose verdict was to be rendered as in civil cases. Although Const 1963, art 1, § 14 does not impose a 12-member jury requirement in civil cases, the second sentence provides guidance on the unanimity issue where a jury of 12 is to render its verdict as in a civil case.

Although there was error in the trial court's instruction, we hold that to reverse on this ground alone would be inconsistent with substantial justice. GCR 1963, 529.1. Plaintiff has made no convincing demonstration that it was prejudiced by the instruction. Plaintiff has had the benefit of the easement taken since March 31, 1967, when the possession and use agreement was signed. The trial in the instant case was lengthy and involved substantial costs. Plaintiff's contention that the error was of constitutional dimensions is not well-taken. Const 1963, art 1, § 14 does not mandate a jury trial in condemnation cases. Its applicability to the case at bar is only indirect by virtue of the statutory direction that the jury's verdict be returned "in the same manner" as in a civil case. Under the present statutory framework, the error cannot reoccur. Under these circumstances, we decline to reverse on the mere speculation that a new trial would result in a verdict more favorable to plaintiff.

Lastly, plaintiff argues that the judgment of the trial court taxes double interest between May 22, 1968, the date of the filing of the petition of condemnation, and April 22, 1971, the date of judgment. We agree. In its instructions, the trial court charged the jury that it was to disregard interests in the computation of the award. The court's judgment confirming the jury verdict of $559,537 provided that plaintiff was to pay to defendant a total of $659,428.02. This total judg-

ment figure was arrived at by adding to the verdict interest at a rate of 5% on the unpaid balance of the judgment beginning March 31, 1967 through April 22, 1971. In computing interest in the amount of $99,891.02, plaintiff was given due credit for the decrease in the unpaid balance of the verdict on August 12, 1968 because of the advance paid by plaintiff in the amount of $101,-715.

However, the judgment further provides that additional interest under MCLA 600.6013; MSA 27A.6013 shall be paid from May 22, 1968, until the judgment is paid in full. The interest at a rate of 5% is to be paid on the amount of $557,713.02. This amount on which statutory interest is to be paid was arrived at by adding the possession and use agreement interest of $99,891.02 to the verdict of $559,537, and then deducting the advance of $101,715.

Thus, between May 22, 1968, and April 22, 1971, the interest periods of both the statute and the possession and use agreement overlap. The statutory interest is computed on approximately the same principle as the contractual interest. In addition, the statutory interest rate is imposed on the interest generated by the contractual rate. According to plaintiff's computations, the total interest rate for the 35 month period of overlap is approximately 11.2%. Contractual interest during the 35 month period totals approximately $71,200 and statutory interest during the same period totals approximately $81,300.

The relevant provision of the possession and use agreement reads as follows:

"IT IS FURTHER AGREED that in the event that damages are judicially determined, or settlement is later arrived at, the OWNER shall be entitled to inter-

est at a rate of Five (5%) per cent on the award or settlement amount, less any sum which may have been previously advanced, from the date of the actual physical possession by the STATE or the date of this Agreement, whichever is first, to the date of the award, judgment, or settlement."

At all times relevant to these proceedings, the applicable provisions of MCLA 600.6013; MSA 27A.6013 read as follows:

"Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 5% per year * * * ."

The imposition of statutory interest is mandatory. *Militzer v Kal-Die Casting Corp,* 41 Mich App 492; 200 NW2d 323 (1972).

It is also clear that the purpose of interest on a condemnation award is to give the condemnee just compensation from the date of the actual or constructive taking. In *Campau v. Detroit,* 225 Mich 519; 196 NW 527; 32 ALR 91 (1923), interest was allowed to accrue on a judgment confirming a condemnation award even though there had been no physical taking as of the date of judgment. In *In re Petition of State Highway Commissioner,* 279 Mich 285; 271 NW 760 (1937), interest was allowed from the date of actual appropriation found to have occurred a number of years before the confirmation of the award. See also *In re Urban Renewal, Elmwood Park Project,* 376 Mich 311; 136 NW2d 896 (1965).

In the instant case, defendant's loss of the use of its property predated the filing of the petition for condemnation by more than one year. The possession and use agreement therefore provided for interest to begin at the earlier date of the quasi-

taking. To this defendant was entitled in return for voluntarily relinquishing its rights earlier than necessary. But it is entitled to no more. In *Vannoy v City of Warren,* 26 Mich App 283; 182 NW2d 65 (1970), *aff'd* 386 Mich 686; 194 NW2d 304 (1972), this Court confronted a similar problem when, in an action for wrongful death, damage interest from the date of injury partially overlapped statutory interest from the date of the filing of the complaint:

"This Court has often noted the distinction between interest on a judgment, which is purely statutory, and interest as an element of damages. The latter is awarded by the jury as part of the general verdict. The former is computed on and added to the general verdict. Yet, both types of interest serve the same basic function: to compensate the plaintiff for the loss of the use of funds.

"Thus, while the two types of interest are different, they are related. Therefore, when statutory interest is provided for a given period, it cannot be said that plaintiff is not compensated for the loss of the use of the funds he recovers as a judgment during that period. He has monetary damages, to which he is theoretically entitled at the moment of his loss, and he has interest during the period provided for by statute. He is entitled to nothing more during that period." (26 Mich App 283, 288; 182 NW2d 65, 68)

The agreement in the case at bar differs from that of *Militzer, supra,* because it was entered into in contemplation of litigation which would determine the just compensation for the taking. Defendant's interpretation that the agreement goes to damage interest only is certainly possible from a literal reading, but such an interpretation results in a combined interest rate exceeding the maximum allowed by statute under MCLA 438.31; MSA 19.15(1). This is so because an award in favor of

defendant in some amount was inevitable as of March 31, 1967. Likewise the imposition of statutory interest on a judgment was inevitable, it being mandatory.

The purpose of interest on a condemnation award is to provide the condemnee with just compensation for that which has been taken. In *State Highway Commissioner v Eilender,* 362 Mich 697, 699; 108 NW2d 755, 756 (1961), it was stated:

"Just compensation, we have held, must put the party injured in as good position as he would have been if the injury had not occurred. *It should neither enrich the individual at the expense of the public nor the public at the expense of the individual."* (Emphasis added.)

Therefore, we construe the agreement between the parties as a waiver by plaintiff effecting an acceleration of the date at which statutory interest was to begin. In return, plaintiff was granted certain rights of possession and use in the easement in advance of the taking.

This cause is remanded with directions to enter judgment confirming the verdict of $559,537. Interest is to be assessed as follows: From March 31, 1967 to August 12, 1968, the date of the advancement, at 5% per annum on $559,537. From August 12, 1968, until satisfaction, at the rate of 5% per annum on the unpaid balance of $457,822. No costs, neither party having prevailed fully.

All concurred.