STEWART v ISBELL

Docket Nos. 84665, 84890. Submitted March 11, 1986, at Lansing. Decided October 6, 1986.

Plaintiffs Raymond L. Stewart and Joan M. Stewart sold their home and acreage under a land contract to defendants Billy D. Isbell and Peggy S. Isbell. The contract called for payment of an interest rate of eleven percent per annum on any unpaid balance, contained an "as is" clause, and required the defendants to maintain adequate insurance on the premises. On January 20, 1981, a fire, caused by the improper installation of a wood-burning stove, destroyed the home. On April 20, 1982, the plaintiffs filed a complaint in the Livingston Circuit Court seeking to foreclose the land contract, alleging that the defendants stopped making payments on January 5, 1982. The defendants thereafter filed a counterclaim and amended counterclaim sounding in negligence, fraud and misrepresentation, and intentional infliction of emotional distress. The trial court, Bert M. Hensick, J., ordered the defendants to use the insurance proceeds to satisfy the arrearage payments under the land contract. The proceeds were depleted in September of 1983, leaving a balance of over $50,000 still owed to the plaintiffs. Plaintiffs moved for partial summary judgment and filed an affidavit stating that at no time were they ever aware of any defect in the stove, the flue, or the installation of the stove and that they never encountered any difficulty in its operation. The circuit court granted the motion, determining that the burden

REFERENCES

Am Jur 2d, Contracts §§ 240 et seq., 281.

Am Jur 2d, Interest and Usury §§ 60, 97.

Am Jur 2d, Pleading §§ 230-237.

Am Jur 2d, Summary Judgment §§ 26 et seq.

Am Jur 2d, Vendor and Purchaser §§ 329 et seq., 406 et seq., 421 et seq., 474 et seq.

Liability of manufacturer or seller as affected by failure of subsequent party in distribution chain to remedy or warn against defect of which he knew. 45 ALR4th 777.

See also the annotations in the Index to Annotations under Foreclosure; Interest on Money; Sale and Transfer of Property; Summary Judgment.

of risk of loss remained with the defendants since the plaintiffs were unaware of the dangerous and concealed defect and the "as is" clause absolved the plaintiffs of liability for unknown defects. An order of summary judgment was entered on May 2, 1985, dismissing the countercomplaint for failure to state a cause of action against the plaintiffs. On April 15, 1985, the circuit court had also entered a judgment of foreclosure finding the defendants personally liable to the plaintiffs for $83,975.76. The judgment of foreclosure further ordered the defendants to pay interest on that amount at the rate of twelve percent per annum from February 5, 1985, and ordered the premises to be sold at public auction. Plaintiffs purchased the property at the foreclosure sale for $87,400. A deficiency judgment was subsequently entered against the defendants in the sum of $776.77 together with interest from the date of the foreclosure sale. Defendants appeal, presenting two issues. First, did the circuit court erroneously dismiss the countercomplaint for the reason that it failed to state a cause of action? Second, did the judgment of foreclosure erroneously compute interest on the principal balance at the statutory rate of twelve percent instead of the contractual rate of eleven percent?

The Court of Appeals *held:*

1. Summary judgment under GCR 1963, 117.2(3) was improper since, in light of the deposition testimony and the pleadings, a genuine issue of material fact existed concerning plaintiffs' knowledge of the concealed defect. The Court of Appeals therefore reversed the decision of the circuit court and vacated the order of partial summary judgment on this ground.

2. The circuit court properly disposed of the counterclaim seeking recovery for emotional distress under Count i in accordance with GCR 1963, 117.2(1), for failure to state a claim upon which relief may be granted.

3. In light of the circuit court's failure to consider the defendants' counterclaims for mental distress damages contained in Counts ii and iii, the Court of Appeals reversed and vacated the order of partial summary judgment and remanded for further proceedings.

4. A judgment of foreclosure is not a money judgment recovered in a civil action for purposes of the interest statute, MCL 600.6013; MSA 27A.6013. The circuit court erred by applying the statutory interest rate of twelve percent in the judgment of foreclosure. The circuit court should have applied the interest rate of eleven percent per annum set forth in the land contract.

Reversed and remanded.

MacKenzie, P.J., dissented in part. It is her opinion that the

trial court properly granted partial summary judgment in favor of plaintiffs on defendants' claim of breach of duty to disclose a known and unreasonably dangerous condition associated with the wood-burning stove. She concluded that, regardless of whether Raymond Stewart knew that the stove's damper was wired open, it remains undisputed that the only logical conclusion to be drawn from the fact that the plaintiffs continually operated the stove from the time of its installation to the time of the sale to the defendants is that the plaintiffs were unaware of a dangerous and concealed defect in the stove. She would affirm the trial court's decision on the defendants' counterclaim.

OPINION OF THE COURT

1. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE A CLAIM — COURT RULES.

A motion for summary judgment based upon a failure to state a claim upon which relief can be granted tests the legal sufficiency of the pleadings; summary judgment is warranted only if, accepting all well-pleaded facts as true, the claim is so clearly unenforceable as a matter of law that no factual development could justify a right to recovery (GCR 1963, 117.2[1]).

2. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT — COURT RULES.

A motion for summary judgment based upon their being no genuine issue as to any material fact tests the factual support for a claim or defense; summary judgment is warranted only if, after considering the affidavits, pleadings, depositions, admissions, and other documentary evidence filed in the action or submitted by the parties, the court is satisfied that it is impossible for the claim or the defense to be supported at trial because of some deficiency which cannot be overcome; such a motion must be supported by affidavits (GCR 1963, 117.2[3], 117.3).

3. APPEAL — JUDGMENTS — SUMMARY JUDGMENT — COURT RULES.

The Court of Appeals may review an order of summary judgment which was granted under the wrong subsection of the summary judgment court rule as though it were granted under the proper subsection where the record permits meaningful review (GCR 1963, 117.2).

4. CONTRACTS — "AS IS" CONTRACTS — RISK OF LOSS.

The buyer bears the risk of loss under an "as is" contract unless the seller fails to disclose concealed defects known to him.

5. VENDOR AND PURCHASER — LAND CONTRACTS — DANGEROUS CONDITIONS.

The doctrine of caveat emptor governs land contracts when the seller surrenders title, possession, and control over the property to the buyer; the seller, however, has a duty to disclose to the buyer any concealed condition known to the seller which involves an unreasonable danger and the failure to make such a disclosure or efforts to actively conceal a dangerous condition renders the seller liable for resulting injuries.

6. INTEREST — MONEY JUDGMENTS.

An award of interest under the statute regarding interest on a money judgment is mandatory in cases to which the statute applies; a money judgment, for purposes of the interest statute, is one which adjudges the payment of a sum of money, as distinguished from an order directing an act to be done or property to be restored or transferred (MCL 600.6013; MSA 27A.6013).

7. JUDGMENTS — INTEREST — FORECLOSURES.

A judgment of foreclosure which orders the sale of property in order to satisfy the amount owed under a land contract for the sale of the property is not a money judgment recovered in a civil action for purposes of the statute regarding interest on a money judgment; however, the statute does apply to a judgment for the amount of a deficiency remaining after the sale (MCL 600.6013; MSA 27A.6013).

8. VENDOR AND PURCHASER — LAND CONTRACTS — FORECLOSURES.

A proceeding to foreclose a land contract is purely statutory in nature; a court, when a complaint is filed for the foreclosure of a land contract, has the power to order a sale of the premises which are the subject of the land contract or that part of the premises which is sufficient to discharge the amount due on the land contract plus costs (MCL 600.3101 *et seq.;* MSA 27A.3101 *et seq.*).

9. VENDOR AND PURCHASER — LAND CONTRACTS — FORECLOSURES — REDEMPTION.

A land contract vendee may redeem the premises sold at a public sale pursuant to an order for such a sale following the filing of a complaint for the foreclosure of the land contract within six months by paying the sum which was bid with interest from the time of the sale at the rate borne by the land contract (MCL 600.3140; MSA 27A.3140).

10. Vendor and Purchaser — Land Contracts — Foreclosures —
    Personal Liability.

    The court in an action for the foreclosure of a land contract shall
    determine and adjudge which defendants are personally liable
    on the land contract; the determination of personal liability is
    contingent or provisional and, until a deficiency arises and the
    mortgagors are required to answer for it, the mortgagors are
    not bound to pay it even if responsible (MCL 600.3150; MSA
    27A.3150).

11. Vendor and Purchaser — Land Contracts — Foreclosures —
    Deficiencies — Surplus.

    Any party to the foreclosure action may bring on for hearing
    before the court the matter of the disposition of any surplus
    money remaining from a foreclosure sale after satisfying the
    amount due the plaintiff (GCR 1963, 745.4; MCR 3.410[D]).

Partial Concurrence and Partial Dissent by MacKenzie, P.J.

12. Contracts — "As Is" Contracts — Land Contracts — Un-
    known Defects.

    *It is proper to interpret an "as is" clause in a land contract to
    refer to those defects which were unknown at the time the
    contract was executed.*

13. Judgments — Summary Judgment — Issue of Material Fact
    — Court Rules.

    *The general court rule regarding a motion for summary judg-
    ment based upon their being no genuine issue as to any
    material fact does not require that there be no issues of fact
    before a summary judgment may be properly granted; it re-
    quires the nonexistence of material factual disputes (GCR 1963,
    117.2[3]).*

*Lavan & Hegarty* (by *Michael K. Hegarty*), for
the Stewarts.

*Kizer & Reader* (by *David J. Reader*), for the
Isbells.

Before: MacKenzie, P.J., and Allen and G. W.
Crockett, III,* JJ.

---

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

G. W. CROCKETT, III, J. The defendants-counter-plaintiffs, Billy D. Isbell and Peggy S. Isbell (defendants), appeal as of right from an October 7, 1985, amended order for judgment of deficiency entered by the Livingston Circuit Court. In addition to this order, defendants challenge a judgment of foreclosure, entered on April 15, 1985, and an order of partial summary judgment, entered on May 2 1985, in favor of the plaintiffs-counterdefendants, Raymond L. Stewart and Joan M. Stewart (plaintiffs). The appeals were consolidated for hearing and decision by the Court of Appeals.

On December 2, 1980, the plaintiffs sold their home and acreage located in Deerfield Township, Livingston County, under a land contract to the defendants for a sum of $150,000. The contract called for the defendants to deposit a down payment of $20,000, to pay monthly installments of $1,200, and to make a $58,000 "balloon" payment on September 15, 1983. The unpaid balance was subject to an interest rate of eleven percent per annum (simple interest). The contract contained an "as is" clause and required the defendants to maintain adequate insurance on the premises.

On January 20, 1981, a fire, caused by the improper installation of a wood-burning stove, destroyed the home. On April 20, 1982, the plaintiffs filed a complaint to foreclose the land contract, alleging that the defendants stopped making payments on January 5, 1982. The defendant subsequently filed a counterclaim sounding in negligence, fraud and misrepresentation, and intentional infliction of emotional distress. Discovery followed.

On May 18, 1982, the circuit court ordered the defendants to place $80,000 in insurance proceeds into an escrow account. On November 29, 1982, the defendants were ordered to use the insurance

proceeds to satisfy the arrearage payments under the land contract. The proceeds were depleted in September of 1983, leaving a balance of over $50,-000 still owed to the plaintiffs according to a January 11, 1985, written opinion of the circuit court.

On January 12, 1984, after discovery was made, the defendants filed an amended counterclaim against the plaintiffs and also a complaint against Jack S. Schade, the builder of the chimney, and Montgomery Ward & Co., Incorporated, the retailer of the stove. The claim against the added parties was not considered below and is not relevant to this appeal.

The amended countercomplaint contained four counts. Count I sounded in negligence, alleging that the plaintiffs failed to: (1) comply with building and safety codes; (2) properly install the stove; (3) warn the defendants of the hazards; and (4) inspect the stove. It also alleged that the plaintiffs negligently hired an unlicensed builder to install the stove. Count II set forth allegations of three instances of fraud and misrepresentation by the plaintiffs. First, the defendants claimed that the plaintiffs misrepresented that the water well was in good working order when, in fact, the well malfunctioned and had to be replaced. Second, the plaintiffs purportedly misrepresented that the septic system was in good condition, but it failed after the defendants took possession. Third, it was alleged that the plaintiffs intentionally omitted to disclose that the stove was unsafe and improperly installed. Defendants further alleged that the plaintiffs knew or should have known of the misrepresentations and concealed defects. Count III attempted to state a cause of action for intentional infliction of emotional distress resulting from the way the plaintiffs handled the insurance proceeds.

First, the defendants claimed that the plaintiffs, knowing that they were responsible for the fire, intentionally prevented the defendants from using the insurance funds to reconstruct the home. Second, the plaintiffs delayed depositing the insurance proceeds in an interest-bearing account, thus causing the loss of interest upon these funds. Count IV applied to defendant Montgomery Ward and is not relevant here.

On March 13, 1984, the plaintiffs moved for partial summary judgment for the reason that defendants "have failed to allege an intentional tort on the part of the plaintiffs, and therefore, defendants' claim for damages under the counterclaim is barred by the contractual agreement between the parties." The plaintiffs filed an affidavit stating that at no time were they ever aware of any defect in the stove, the flue, or the installation and that they never encountered any difficulty whatsoever in its operation even though they had used it on a continual basis.

On January 14, 1985, the circuit court issued a written opinion granting the motion. The circuit court determined that the burden of risk of loss remained with the defendants since the plaintiffs were unaware of the dangerous and concealed defect and the "as is" clause absolved the plaintiffs of liability for unknown defects. The written opinion struck "Paragraph 9(c) of the counterclaim," an apparent reference to the original counterclaim, in ruling that the defendants did not allege sufficient facts supporting a counterclaim for mental suffering.

On May 2, 1985, an order of summary judgment was entered dismissing the countercomplaint with prejudice and awarding costs to plaintiffs in the sum of $202.45. The order recited that both parties had filed extensive briefs and affidavits and that

the court found that the countercomplaint failed to state a cause of action against plaintiffs for reasons stated in its prior opinion. The order did not identify the applicable court rule under which summary judgment was granted.

On April 15, 1985, the circuit court entered a judgment of foreclosure which provided:

> NOW, THEREFORE, IT IS ORDERED that there is due the Plaintiffs upon the land contract set forth in the Complaint, for principal and interest as of February 5, 1985, the sum of Eighty-Three Thousand Nine Hundred Seventy-Five and 76/100 ($83,-975.76) Dollars, and that Defendants, BILLY D. ISBELL and PEGGY S. ISBELL, are personally liable for the payment thereof. . . .

The judgment of foreclosure further ordered defendants to pay interest on the $83,975.76 sum at the rate of twelve percent per annum from February 5, 1985. It further ordered that the premises be sold at a public auction.

At the foreclosure sale on June 28, 1985, plaintiffs purchased the property for $87,400. A deficiency judgment was subsequently entered against the defendants in the sum of $776.77 together with interest from the date of the foreclosure sale.

Two issues are presented. First, did the circuit court erroneously dismiss the countercomplaint for the reason that it failed to state a cause of action? Second, did the judgment of foreclosure erroneously compute interest on the principal balance at the statutory rate of twelve percent instead of the contractual rate of eleven percent?

I

At the outset we note that the plaintiff's motion for partial summary judgment, the circuit court's

written opinion, and the order fail to specify the applicable court rule under which summary judgment was granted. A motion for summary judgment under GCR 1963, 117.2(1) tests the legal sufficiency of the pleadings with all well-pleaded facts accepted as true. Summary judgment is warranted only if a claim is so clearly unenforceable as a matter of law that no factual development could justify a right to recovery. *Abel v Eli Lilly & Co,* 418 Mich 311; 343 NW2d 164 (1984), reh den 419 Mich 1201 (1984), cert den — US —; 105 S Ct 123; 83 L Ed 2d 65 (1984). In contrast, a motion for summary judgment under GCR 1963, 117.2(3) tests the factual support for a claim or a defense. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972). Its limited purpose is to determine whether a genuine issue of any material fact exists. *Durant v Stahlin,* 375 Mich 628; 135 NW2d 392 (1965). When deciding a motion for summary judgment on this ground, the court must consider the affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). The court must be satisfied that it is impossible for the claim or the defense to be supported at trial because of some deficiency which cannot be overcome. *Rizzo, supra.* A motion based upon GCR 1963, 117.2(3) must be supported by affidavits. GCR 1963, 117.3. If summary judgment is granted under the wrong subsection, this Court may review the order of summary judgment as though it were granted under the proper subsection when the record permits meaningful review. *Lawrence v Dep't of Treasury,* 140 Mich App 490, 494; 364 NW2d 733 (1985).

The written opinion first considered whether the plaintiffs knew of the hidden defect in the stove

which caused the fire. The buyer bears the risk of loss under an "as is" contract unless the seller fails to disclose concealed defects known to him. *Lenawee Co Bd of Health v Messerly,* 417 Mich 17, 32; 331 NW2d 203 (1982); *Christy v Prestige Builders, Inc,* 415 Mich 684; 329 NW2d 748 (1982). The doctrine of caveat emptor governs land contracts when the seller surrenders title, possession, and control over the property to the buyer. *Christy, supra,* p 694. This rule is subject to two exceptions, the first of which is relevant here, namely, that the seller has a duty to disclose to the buyer any concealed condition known to the seller which involves an unreasonable danger. Under this exception, failure to make disclosure or efforts to actively conceal a dangerous condition renders the seller liable for resulting injuries. *Christy, supra,* p 694.

The circuit court found that the plaintiffs had no knowledge of the concealed defects in the stove or chimney since they had used the stove for years without mishap. In reaching this conclusion, the circuit court clearly went beyond the pleadings to the affidavit filed by the plaintiffs. Thus, the circuit court granted summary judgment on this point under GCR 1963, 117.2(3), even though the language of the opinion ("there is no allegation of intentional tort, nor that the sellers concealed any known defects") and of the order of partial summary judgment ("the countercomplaint failed to state a cause of action against Plaintiffs STEWART only, for the reasons stated in the Court's Opinion dated January 11 1985") suggests reliance on GCR 1963, 117.2(1). In any event, GCR 1963, 117.2(1) would be an inappropriate basis for summary judgment since the amended countercomplaint was legally sufficient. The defendants properly alleged that the plaintiffs knew of the hidden

defects and that they either negligently or intentionally failed to disclose them.

The plaintiffs' knowledge of the concealed defects is plainly the center of this controversy and raises a genuine issue of material fact. Against the defendants' allegation of plaintiffs' knowledge of the concealed defects, the plaintiffs submitted depositions and filed their own affidavits.

Defendants' allegations of knowledge were supported by the deposition testimony of Richard Schade, the unlicensed contractor who helped install the stove and chimney, and the deposition testimony of Cindy Short, a former neighbor of the plaintiffs. Schade testified that plaintiffs hired him in April of 1976 to build a brick hearth, brick wall, and chimney to accommodate the wood-burning stove. Schade's testimony described how he constructed the chimney and venting system. Schade testified that he assisted plaintiff Raymond Stewart remove the stove from its shipping carton and helped place it near the wall. Schade denied installing the stove or a stove pipe which connected it to the wall. Short testified that plaintiff Joan Stewart stated that her husband, Raymond, installed the stove. Short testified that Joan Stewart remarked, "[D]idn't Ray do a nice job with the brick, and putting the stove in it."

The deposition testimony of Jack Hughes, a fire investigator, reported two probable causes of the fire. First, he opined that the venting pipe which ran through the chimney was installed without proper insulation and was located too close to the interior wall. Second he testified that the damper, a vent within the internal component of the stove, was wired in the open position, thereby causing the stove to burn fuel at optimum temperatures. Hughes thought that the damper was wired for the purposes of shipping. However, the answers to

interrogatories filed by defendant Montgomery Ward stated that no wire was used to hold the damper in place. Hughes explained that the damper could be visible from a certain angle before it was installed, but would be hidden after installation.

In light of the deposition testimony and the pleadings, it is clear that a genuine issue of material fact existed concerning plaintiffs' knowledge of the concealed defect. The deposition testimony of Schade and Short indicates that plaintiff Raymond Stewart installed the stove, including the stove pipe, which the plaintiffs admit caused the fire. Second, a conflict exists concerning the wiring of the damper. In light of defendant Montgomery Ward's denial of the use of wire and the evidence that Raymond Stewart connected the stove, an issue exists of whether he knew about the wiring. In short, summary judgment under GCR 1963, 117.2(3) was improper. Thus, we reverse the decision of the circuit court and vacate the order of partial summary judgment on this ground.

The opinion next addressed the claim for damages due to mental distress under the theories of negligence (Count I), fraud (Count II) and intentional infliction of emotional distress (Count III). Relying upon *Chrum v Charles Heating & Cooling Inc,* 121 Mich App 17; 327 NW2d 568 (1982), the circuit court ruled that the defendants could not recover for mental distress due to the plaintiff's negligence since the countercomplaint failed to allege that the defendants suffered a definite physical impact. On appeal the defendants do not challenge and we do not disturb this portion of the circuit court's holding. The circuit court correctly observed that the defendants failed to allege sufficient facts concerning the element of physical impact. We conclude that the circuit court prop-

erly disposed of the claim seeking recovery for emotional distress under Count I in accordance with GCR 1963, 117.2(1), for failure to state a claim upon which relief may be granted.

The opinion is devoid of reference to the counterclaims for mental distress damages under the theories of fraud and misrepresentation contained in Count II, specifically, concerning the operability of the water well and septic systems, as well as the theory of intentional infliction of emotional distress alleged in Count III concerning the alleged mishandling of insurance proceeds. Notwithstanding this failure to consider these counterclaims for mental distress under theories alleged in Count II and Count III, the order of partial summary judgment dismissed *all* counterclaims against the plaintiffs. In light of the circuit court's failure to consider the defendants' counterclaims under these alternate theories, we reverse and vacate the order of partial summary judgment and remand for further proceedings.

In light of this disposition, we do not consider the argument that the circuit court erred by deciding the motion for partial summary judgment based upon the original countercomplaint and not upon the amended countercomplaint.

II

In the judgment of foreclosure the amount owed of $83,975.76 was calculated by applying the eleven percent of interest specified by the land contract to the arrears, and also by applying the twelve percent rate of interest specified by the interest statute, MCL 600.6013(4); MSA 27A.6013(4). The judgment of foreclosure further required defendants to pay the sum due with interest at the rate of twelve percent per annum

thereafter, again apparently in reliance upon the interest statute. Although the parties argued the applicability of the interest statute at the hearing held April 15, 1985, the circuit court apparently found that it should apply.

MCL 600.6013; MSA 27A.6013 provides:

(1) Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section.

* * *

(4) For complaints filed on or after June 1, 1980, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually unless the judgment is rendered on a written instrument having a higher rate of interest. In that case interest shall be calculated at the rate specified in the instrument if the rate was legal at the time the instrument was executed. The rate shall not exceed 13% per year compounded annually after the date judgment is entered.

Subsection 4, an amendment enacted by the Legislature in 1980 PA 134, clearly allows compound interest at a rate of twelve percent on a money judgment in which the complaint has been filed on or after June 1, 1980. The previous interest statute had authorized interest at a rate of six percent which the courts had construed as simple interest. *Gage v Ford Motor Co,* 423 Mich 250, 259; 377 NW2d 709 (1985). The difference between simple and compound interest is that simple interest does not merge with the principal and thus does not become part of the base on which future interest is calculated. *Gage, supra.* The purpose of an award of interest under MCL 600.6013; MSA 27A.6013 is to compensate the prevailing party for

the expenses incurred in bringing an action and for the delay in receiving money damages. *In re Cole Estate,* 120 Mich App 539, 550; 328 NW2d 76 (1982), and cases cited therein. An award of interest under the statute is mandatory in cases to which the statute applies. *State Highway Comm v Great Lakes Express Co,* 50 Mich App 170; 213 NW2d 239 (1973).

The issue presented here is whether a judgment of foreclosure is a money judgment recovered in a civil action for purposes of the interest statute, MCL 600.6013; MSA 27A.6013. We hold that it is not.

For purposes of the interest statute, a money judgment is defined as one which adjudges the payment of a sum of money, as distinguished from an order directing an act to be done or property to be restored or transferred. *Moore v Carney,* 84 Mich App 399, 404; 269 NW2d 614 (1978), quoting from Black's Law Dictionary (4th ed), p 980. See also, 14 Callaghan's Michigan Civil Jurisprudence, Interest, § 13, p 478. Under this definition, the judgment of foreclosure was not a money judgment because it ordered the sale of property in order to satisfy the amount owed under the land contract.

Analogous results have been reached in other cases. In a minority shareholder's action, an order requiring the corporation and the individual directors to purchase the minority shareholder's stock for a certain sum with costs and awarding attorney fees to the minority shareholder was deemed not to be a money judgment for purposes of the interest statute. *Moore, supra.* In that case the court noted that, while the judgment involved money, it was not solely a "money judgment," but was essentially part of an equitable remedy. Likewise, a probate court order awarding a widow a forced share of an estate pursuant to MCL

700.126; MSA 17.5126 was held not to be a money judgment under the interest statute. *In re Cole Estate, supra.*

A proceeding to foreclose a land contract is purely statutory in nature. MCL 600.3101 *et seq.,* MSA 27A.3101 *et seq.* When a complaint is filed for the foreclosure of a land contract, the court has power to order a sale of the premises which are the subject of the land contract or of that part of the premises which is sufficient to discharge the amount due on the land contract plus costs. MCL 600.3115; MSA 17A.3115. If the property is sold at a public sale, the land contract vendee may redeem the premises within six months by paying the sum which was bid with interest from the time of the sale at the rate borne by the land contract. MCL 600.3140; MSA 27A.3140. The foreclosure statute further provides that the court shall determine and adjudge which defendants are personally liable on the land contract. MCL 600.3150; MSA 27A.3150. Further, the judgment shall provide that upon the confirmation of the report of sale that if either the principal, interest, or costs ordered to be paid is left unpaid after applying the amount received upon the sale of the premises, the clerk of the court shall issue execution for the amount of the deficiency upon the application of the plaintiff's attorney without notice to the defendant or his attorney. MCL 600.3150; MSA 27A.3150. GCR 1963, 745.4, now MCR 3.410(D) provides that, if any surplus money remains from a foreclosure sale after satisfying the amount due the plaintiff, any party to the action may bring on for hearing before the court the disposition of the surplus money.

From these sources it appears that the amount to be calculated in the judgment of foreclosure is that which is owed *under the written instrument.*

This accords with the contingent nature of a judgment of foreclosure described by the Supreme Court in *Powers v Golden Lumber Co,* 43 Mich 468, 472; 5 NW 656 (1880). The determination of personal liability in a foreclosure decree is contingent or provisional and, until a deficiency arises and the mortgagors are required to answer for it, the mortgagors are not bound to pay it even if responsible. *Powers, supra.* In other words, where a foreclosure decree provides for the sale of land, there is no personal liability to be enforced against a defendant until after that land has been sold and a deficiency reported, and (under the law existing *before* the foreclosure statute, MCL 600.3101 *et seq.;* MSA 27A.3101 *et seq.*) subsequent proceedings are taken to secure a deficiency decree. *Kelly v Gaukler,* 164 Mich 519, 531; 129 NW 703 (1911).

In short, the circuit court erred by applying the statutory interest rate of twelve percent in the judgment of foreclosure. The circuit court should have applied the interest rate of eleven percent per annum (simple interest) set forth in the land contract. We reverse and vacate the judgment of foreclosure and the deficiency judgment in light of this error in computation. We remand this case to the circuit court for a determination of the amount owed under the land contract after application of the eleven percent rate of interest. If a deficiency remains after the auction proceeds are applied against the new figure, then a judgment may enter in that amount with statutory interest under MCL 600.6013; MSA 27A.6013.

Reversed and remanded for proceedings not inconsistent with this opinion.

ALLEN, J., concurred.

MACKENZIE, P.J. *(dissenting in part).* I respectfully dissent from part of the majority's opinion. In my opinion, the trial court properly granted partial summary judgment in favor of plaintiffs on defendants' claim of breach of duty to disclose a known and unreasonably dangerous condition associated with the wood-burning stove.

The parties evidently agree that their land contract transferred the premises from plaintiffs to defendants "as is." In *Lenawee Co Bd of Health v Messerly,* 417 Mich 17, 32; 331 NW2d 203 (1982), the Supreme Court stated that, if an "as is" clause is to have any meaning at all, it must be interpreted to refer to those defects which were unknown at the time the contract was executed.

The majority holds that because there exists a question as to whether Raymond Stewart knew that the stove's damper was wired open partial summary judgment was improper. It seems to me that, in so deciding, the majority has lost sight that GCR 1963, 117.2(3) does not require that there be *no* issues of fact before summary judgment may be properly granted; it requires the nonexistence of *material* factual disputes. Whether further factual development would yield an affirmative or negative response to the majority's purported issue is of no consequence. It remains undisputed that while plaintiffs lived in the home they continually operated the stove from the time of its installation to the time of the sale to defendants. As the trial court implicitly recognized, wiring or no wiring, the only logical conclusion to be drawn from this fact is that plaintiffs were unaware of a dangerous and concealed defect in the stove.

Accordingly, I would affirm the decision of the trial court as to the defendant's counterclaim.