DEPARTMENT OF TRANSPORTATION v GILLING

Docket Nos. 285369 and 287552. Submitted September 9, 2009, at Lansing. Decided July 15, 2010, at 9:00 a.m.

The Department of Transportation brought a condemnation action in the Lapeer Circuit Court against Lawrence P. Gilling and others, seeking to acquire a multiacre parcel on highway M-24 as part of a road-widening project. The parcel was owned by the Gilling family and two corporate entities and was used to operate a retail nursery and landscaping businesses. After the condemnation action was filed, defendants moved their businesses to an interim, leased site. In a separate administrative proceeding under the act concerning relocation assistance for persons displaced by acquisition of property for highways, MCL 252.141 *et seq.*, plaintiff reimbursed defendants approximately $147,000 for moving and relocation expenses for the move to the interim site. Two years after plaintiff filed the condemnation action, defendants purchased a new site and moved their businesses there. In the condemnation action, defendants asserted that they were entitled to compensation for business-interruption damages, including the costs and expenses of relocating their businesses from the interim site to the new location. Plaintiff argued that under MCL 252.143, reimbursement for moving and relocation expenses was only available through administrative proceedings and, thus, defendants were not permitted to claim moving and relocation expenses in the condemnation action. The court, Michael P. Higgins, J., disagreed with plaintiff, concluding that administrative-reimbursement proceedings constitute a supplementary scheme for the recovery of moving and relocation expenses not otherwise fully compensable under state condemnation law and that defendants could present evidence of their moving and relocation expenses in the condemnation action as long as those expenses were not duplicative of claims that had already been reimbursed. During the trial, defendants moved to exclude the testimony of a real estate broker who was prepared to testify that defendants' new location was available for sale before, during, and after defendants' move to the interim site. Plaintiff argued that this evidence was relevant to the jury's determina-

tion of just compensation because it indicated that defendants had failed to mitigate their damages. The trial court granted defendants' motion and excluded the evidence, determining that it was only collateral to the issue of just compensation. While the trial was ongoing, the parties agreed to a just-compensation award of approximately $736,000 for defendants' building, fixtures, and some site improvements. The jury awarded defendants an additional $585,000 for the taking of their land and $519,550 that included their moving and relocation expenses. Plaintiff appealed, challenging the award of moving and relocation expenses (Docket No. 285369). The circuit court subsequently awarded defendants attorney fees and expert witness fees. Plaintiff also appealed the award of those fees (Docket No. 287552). The appeals were consolidated.

The Court of Appeals *held*:

1. Just compensation includes business-interruption damages. Claims for business-interruption damages may include actual moving and relocation expenses, but do not include lost profits resulting from a business interruption. Thus, defendants could properly seek reimbursement for their business-interruption damages, including moving and relocation expenses, in the condemnation action.

2. The cost of moving fixtures, including trade fixtures, may be included in an award for business-interruption damages. An item is a trade fixture if it is constructively annexed to the property because it is intended to be permanent, would lose value if removed from the property, and enables and is essential to the business. Defendants' nursery stock was not a trade fixture. Rather, it was the product of defendants' businesses. The nursery stock was intended to be sold, and its removal from the property did not impair its value or the value of the property. The trial court erred by allowing defendants to recover for the cost of moving their nursery stock because the losses arising from the relocation of the nursery stock were noncompensable lost profits.

3. The administrative-recovery statutes, MCL 252.141 *et seq.*, MCL 213.321 *et seq.*, and MCL 213.351 *et seq.*, supplement, rather than supplant, a property owner's constitutional right to receive just compensation for moving and relocation expenses as part of a business interruption.

4. The trial court abused its discretion by excluding the evidence concerning the availability of defendants' permanent site when they moved to the interim site. The evidence was central to the issue of just compensation, and plaintiff should have the opportunity to show that at least some of defendants' moving expense was unnecessary and argue that defendants may have

failed to mitigate their damages. Failure to grant a new trial would be inconsistent with substantial justice.

Affirmed in part, reversed in part, and remanded.

1. EMINENT DOMAIN — JUST COMPENSATION — BUSINESS-INTERRUPTION DAMAGES — MOVING AND RELOCATION EXPENSES — ADMINISTRATIVE RECOVERY.

Just compensation for the taking of property includes business-interruption damages; business-interruption damages may include moving and relocation expenses, but do not include lost profits resulting from a business interruption (MCL 213.51 *et seq.*).

2. EMINENT DOMAIN — JUST COMPENSATION — BUSINESS-INTERRUPTION DAMAGES — MOVING AND RELOCATION EXPENSES — FIXTURES — TRADE FIXTURES.

The cost of moving fixtures, including trade fixtures, may be included in an award for business-interruption damages; an item is a trade fixture if it is constructively annexed to the property because it is intended to be permanent, would lose value if removed from the property, and enables and is essential to the business.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Ronald W. Emery*, Assistant Attorney General, for plaintiff.

*Steinhardt Pesick & Cohen, PC* (by *H. Adam Cohen*, *Jerome P. Pesick*, and *Jason C. Long*), for defendants.

Before: SAAD P.J., and WHITBECK and ZAHRA, JJ.

SAAD, P.J. These consolidated appeals arise out of a condemnation proceeding brought by plaintiff, the Michigan Department of Transportation (MDOT), to acquire a multiacre parcel located on highway M-24 (also known as Lapeer Road) in Lapeer County as part of a road-widening project. In Docket No. 285369, MDOT appeals the trial court's judgment on the jury verdict in favor of defendants, Lawrence P. Gilling, Margaret Gilling, Stephen L. Gilling, Donna Gilling, Robert L. Gilling, Connie Gilling, Gilling's Nursery & Landscaping, Inc., and Gilling's Ar-

tistic Landscaping, Inc. (collectively, "Gilling"). In Docket No. 287552, MDOT appeals the trial court's postjudgment order that awarded Gilling attorney fees and costs under MCL 213.66.

## I. CONDEMNATION: MOVING AND RELOCATION EXPENSES[1]

The trial court ruled that business-interruption damages include moving and relocation expenses. The trial court further held that the statutorily authorized administrative-reimbursement proceedings constitute a supplementary scheme for the recovery of moving and relocation expenses not otherwise fully compensable under state condemnation law. See MCL 252.143; MCL 213.328(1); MCL 213.355. We agree in part. First, we hold that claims for business-interruption damages do not allow for lost profits, but permit recovery of moving and relocation expenses. However, although moving and relocation expenses can include expenses for moving trade fixtures, we hold that the trial court erred by classifying defendants' nursery stock as trade fixtures. We also hold that the trial court abused its discretion when it excluded key expert testimony that supported MDOT's position that Gilling was unreasonable in moving to an interim location before moving to its final destination. Finally, we hold that administrative-recovery schemes supplement rather than supplant a property owner's constitutional right to recover just compensation for moving and relocation expenses as part of a business interruption. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

In September 2005, MDOT filed a complaint under the Uniform Condemnation Procedures Act (UCPA),

---

[1] Docket No. 285369.

MCL 213.51 *et seq.*, seeking to acquire a multiacre parcel that was owned by members of the Gilling family and two corporate entities and was used to operate a retail nursery and landscaping businesses. MDOT acquired the property to implement a road-widening project on M-24. Gilling did not challenge the necessity or public use supporting the taking. Therefore, the primary issue was and is the amount of just compensation to which Gilling is entitled.

In September 2005, Gilling relocated its businesses to a leased property site that Gilling found unsuitable as a permanent location. In January 2006, Gilling submitted to MDOT its claims for compensable items. Under MCL 213.55(3), if the property owner believes the good-faith written offer made for the property by MDOT under MCL 213.55(1) is inadequate, the owner may submit a written claim to MDOT that details the nature and substance of property damage caused by the taking apart from the value of the property taken and not described in the good-faith written offer. An underlying premise of Gilling's claim is its assertion that its businesses had to be relocated to an alternate site because the partial taking left only a "small, inadequate remainder[.]" MDOT reimbursed Gilling approximately $147,000 for moving and relocation expenses for the move to the interim site pursuant to this administrative proceeding.

In September 2007, Gilling purchased another site that was better suited to its purpose and relocated to the new, permanent location. In the condemnation proceedings before the trial court, Gilling claimed that it was entitled to compensation for its business-interruption damages, including the costs and expenses of relocating its businesses from the interim site to the permanent site. During Gilling's subsequent motion to exclude MDOT's business-valuation expert witness

from trial, MDOT admitted that it was statutorily required to reimburse an owner for actual moving and relocation expenses. MCL 252.143. But MDOT pointed out that it had already reimbursed Gilling approximately $147,000 for moving and relocation expenses for the move to the interim site in the administrative proceeding. MDOT argued that the types of business-interruption expenses sought by Gilling were actually moving and relocation expenses. MDOT contended that such expenses were properly sought administratively rather than in condemnation proceedings.

In response, Gilling asserted that MDOT's prior administrative payment was "totally irrelevant to MDOT's duty to appraise, and pay, [Gilling's] constitutional business interruption damages." In other words, Gilling contended that any *statutory* moving and relocation allowances did not limit a landowner's *constitutional* business-interruption damages. It asserted that "an owner's statutory moving allowance, and constitutional business interruption damages, are distinct." According to Gilling, under the UCPA, "any amounts that MDOT already paid in statutory moving costs are subtracted from the just compensation estimate for business interruption." Gilling pointed out that its business-interruption appraisal had already made an adjustment for the prior payment. Therefore, according to Gilling, it was not seeking a double payment. After reviewing the facts and proceedings, the trial court denied Gilling's motion to exclude MDOT's expert. The trial court agreed with MDOT that "relocation costs are compensable under MCL 252.143 and are not part of the condemnation proceedings," but concluded that "business interruption damages are part of these proceedings so long as they do not duplicate the relocation costs."

In a later motion in limine to prohibit MDOT from presenting issues of law to the jury, Gilling explained that its actual costs substantially exceeded MDOT's administrative payments. Therefore, Gilling contended, it was not seeking double payment. Rather, according to Gilling, it was merely seeking additional payment for its business-interruption costs caused by the need to relocate. Gilling claimed that because of the inadequacy of MDOT's just-compensation payment, Gilling was unable to initially secure a permanent location and therefore had to incur additional costs in relocating again. Gilling stated that its interim site was not appropriate for use as a permanent site because of limited frontage, poor soil, and inadequate storage. MDOT responded that Gilling was improperly attempting to " 'lump' all of [Gilling's] moving, re-establishment and relocation costs under the heading of 'Business Interruption Damages.' " Although MDOT acknowledged that some of Gilling's claimed damages could be considered business-interruption damages, it maintained that business-interruption damages did not include moving and relocation expenses.

MDOT then moved in limine to exclude all evidence of Gilling's moving and relocation expenses. It argued that MCL 252.143 specifically excludes such expenses from condemnation actions. MDOT recognized that there can be business-interruption expenses that do not involve moving or relocation, which would be compensable as just compensation in a condemnation action. But MDOT contended that any moving and relocation expenses were not compensable in that same manner. MDOT asserted that if Gilling believed that the original administrative payment was insufficient to reimburse it for the move to the interim site, then Gilling could have administratively appealed that decision. Likewise, MDOT stated that Gilling could seek administrative

payment of its moving and relocation expenses for the second move.

In a written opinion, the trial court addressed both Gilling's motion in limine to prohibit MDOT from presenting issues of law to the jury and MDOT's motion in limine to exclude all evidence of Gilling's moving and relocation expenses. According to the trial court, the primary question before it was whether Michigan's administrative procedures for claiming moving and relocation expenses were a property owner's exclusive means of obtaining reimbursement for such costs, or whether those procedures were optional and in addition to the statutory-condemnation and common-law remedies. The trial court observed that the answer to this question required interpretation of MCL 252.143, which states: "Relocation and financial assistance allowed under this act are independent of and in addition to compensation for land, buildings or property rights and shall not be the subject of consideration in condemnation proceedings."

The trial court noted that the parties agreed that a property owner could not claim damages in a condemnation proceeding that duplicated his or her administrative claims. And the trial court acknowledged that Michigan caselaw made clear that business-interruption damages are compensable in condemnation proceedings, separate from administrative proceedings, provided that damages could be proved with a reasonable degree of certainty. Therefore, according to the trial court, the issue boiled down to whether moving and relocation expenses could legitimately be part of business-interruption damages.

Noting a lack of Michigan precedent on point, the trial court examined caselaw from other jurisdictions. The trial court determined that the case that appeared most directly on point was *State ex rel Dep't of Transp v Little*,

100 P3d 707 (Okla, 2004). Indeed, after quoting the Oklahoma Supreme Court's reasoning in that case, the trial court adopted that reasoning, *id.* at 716, concluding that administrative reimbursement proceedings were " 'a *supplementary* scheme of recovery under which . . . funds can be used to reimburse a person displaced from a home, *business*, or farm by a [government] . . . project for that person's moving and related expenses where such expenses are not otherwise fully compensable under state condemnation law.' " (Emphasis added.) The trial court further noted that courts in Florida and Mississippi had reached similar conclusions. *Malone v Florida Dep't of Transp, Admin Div*, 438 So 2d 857 (Fla App, 1983), overruled in part by *Sys Components Corp v Florida Dep't of Transp*, 14 So 3d 967 (Fla, 2009); *Mississippi State Hwy Comm v Rives*, 271 So 2d 725 (Miss, 1972). Accordingly, the trial court granted Gilling's motion to prohibit MDOT from raising Gilling's failure to present its claims in the administrative proceedings and denied MDOT's motion to exclude evidence of Gilling's moving and relocation expenses, provided it did not duplicate expenses previously reimbursed.

The parties agreed on the record to a just-compensation award in the amount of approximately $736,000 for the building, fixtures, and other site improvements on the property. Therefore, the jury was only required to determine the just compensation for the land and, in keeping with the trial court's ruling, the amount to be awarded for the moving and relocation expenses. The jury awarded Gilling a total of $1,104,550: $585,000 in compensation for Gilling's land and an additional $519,550, which included compensation for Gilling's "printed materials at original location," "time and costs," "first move costs," "interim costs," "second move costs," "reestablishment costs," and "property taxes increase[.]" MDOT now appeals the trial court's judgment on the verdict.

III. MOVING AND RELOCATION EXPENSES AND JUST COMPENSATION

A. STANDARD OF REVIEW

MDOT does not challenge the $736,000 awarded as just compensation for the building, fixtures, and other site improvements on the property. Indeed, MDOT has already paid that amount to Gilling. Further, MDOT does not challenge the jury's award of $585,000 as compensation for Gilling's land. MDOT contends, however, that the trial court erred by allowing the jury to award $519,550 in moving and relocation expenses as just compensation. According to MDOT, caselaw has authorized recovery of business-interruption damages as part of just compensation. But, according to MDOT, except for detach-and-reattach expenses for fixtures, business-interruption damages do not include incidental expenses for moving personal property and other relocation expenses. MDOT argues that evidence of the indirect expenses of the taking of a business is nothing more than an attempt to recover lost profits, which Michigan courts have made clear are explicitly excluded from just compensation. MDOT states that recovery of moving and relocation expenses is statutorily provided as an administrative remedy, separate from just compensation. We review de novo questions of statutory and constitutional interpretation. *Dep't of Transp v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008); *Cardinal Mooney High Sch v Mich High Sch Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

B. CONSTITUTIONAL JUST-COMPENSATION PRINCIPLES

1. OVERVIEW

"Private property shall not be taken for public use without just compensation therefor being first made or

secured in a manner prescribed by law." Const 1963, art 10, § 2. "[T]he goal of just compensation is to ensure that the injured party is restored, at least financially, to the same position it would have been in if the taking had not occurred." *Dep't of Transp v Frankenlust Lutheran Congregation*, 269 Mich App 570, 578; 711 NW2d 453 (2006). " 'The constitutional provision entitling the owner of private property, taken for public use, to just compensation, has uniformly been construed to require full and adequate compensation.' " *In re Grand Haven Hwy*, 357 Mich 20, 31; 97 NW2d 748 (1959), quoting *Comm'rs of Parks & Boulevards of Detroit v Moesta*, 91 Mich 149, 154; 51 NW 903 (1892).

Gilling cites four primary cases in support of its argument that a business owner may receive business-interruption damages, including moving and relocation expenses, as constitutional just compensation. They are *Grand Rapids & I R Co v Weiden*, 70 Mich 390; 38 NW 294 (1888), *Grand Haven Hwy*, 357 Mich 20, *Detroit v Hamtramck Community Fed Credit Union*, 146 Mich App 155; 379 NW2d 405 (1985), and *State Hwy Comm v Great Lakes Express Co*, 50 Mich App 170; 213 NW2d 239 (1973). MDOT attempts to distinguish and discount these cases and argues that, except for expenses related to fixtures, incidental expenses for moving and relocation are not part of constitutionally required just compensation. Although we conclude that caselaw, including the cases on which Gilling relies, establishes that a property owner is allowed to recover moving and relocation expenses as business-interruption damages, the trial court erred by ordering MDOT to compensate Gilling for the cost of relocating nursery stock, as these expenses are properly classified as lost profits resulting from the interruption of business and not expenses caused by a business interruption.

2. *GRAND RAPIDS & I R CO v WEIDEN*

In *Weiden*, 70 Mich at 395, the Michigan Supreme Court observed that the appellant property owners were "using their property in lucrative business, in which the locality and its surroundings had some bearing on its value." Therefore, the Court concluded that the appellants were entitled to compensation for their losses that resulted from the interruption of their business in addition to the value of the property itself:

> Apart from the money value of the property itself, they were entitled to be compensated so as to lose nothing by the interruption of their business and its damage by the change. A business stand is of some value to the owner of the business, whether he owns the fee of the land or not, and a diminution of business facilities may lead to serious results. There may be cases when the loss of a particular location may destroy business altogether, for want of access to any other that is suitable for it. *Whatever damage is suffered, must be compensated.* Appellants are not legally bound to suffer for [the railroad's] benefit. [The railroad] *can only be authorized to oust them from their possessions by making up to them the whole of their losses.* [*Id.* (emphasis added).[2]]

The Court then reversed the jury's verdict because it failed to adequately compensate for business damages; addressing the claims of one of the appellants, the Court stated:

---

[2] See also *In re Slum Clearance*, 332 Mich 485, 497; 52 NW2d 195 (1952), quoting *In re Park Site on Private Claim 16, Detroit*, 247 Mich 1, 3; 225 NW 498 (1929) (stating that "the owner of property taken may recover for interruption of business"); *Moesta*, 91 Mich at 154 (stating that in condemnation cases the remedy afforded is similar to an action in tort "in which property rights have been interfered with without the owner's assent" and that "[i]n such cases damages for the interruption of the owner's business are allowed").

It appeared affirmatively, and without contradiction, that *the actual expenses of moving* [the] business reached within a few dollars of all that [the jury] awarded for those purposes and for his buildings and improvements. The testimony shows that the buildings and improvements were of considerable value. The verdict is not only grossly unfair, but given without any reference to uncontradicted testimony. Juries have no right to disregard facts, and follow their own caprices. There is no reasonable ground on which the verdict . . . can be sustained. [*Id.* (emphasis added).]

Therefore, *Weiden* made clear that the appellant could be compensated for the "actual expenses of moving his business," in addition to compensation for his buildings and improvements. *Id.*

### 3. *In re GRAND HAVEN HWY*

In *Grand Haven Hwy*, 357 Mich at 24, the appellee corporation sought damages for expenses occasioned by business interruption and the expense of relocating its machinery and equipment when the state took its manufacturing property, thereby "forcing [the corporation] to move its entire productive facility to a new location." The state highway department, however, argued that recent cases had denied recovery of losses resulting from interruption of business, thereby repudiating former cases, like *Weiden*, that had allowed such damages. *Id.* at 31, citing *In re Condemnation of Lands for Battle Creek Park Purposes*, 341 Mich 412, 422; 67 NW2d 49 (1954), *In re Slum Clearance*, 332 Mich 485, 496; 52 NW2d 195 (1952), *In re Edward J Jeffries Homes Housing Project*, 306 Mich 638; 11 NW2d 272 (1943), and *In re Park Site on Private Claim 16, Detroit*, 247 Mich 1, 3, 4; 225 NW 498 (1929). The Court then explicitly held that the cases cited by the state were

limited to repudiating recovery of lost *profits*, not any and all expenses related to business interruption:

> An examination of the . . . cases cited by [the state] discloses that this Court held that the property owner could not recover loss of profits because of damages caused by business interruption, but did not repudiate *Moesta* or *Weiden* in regards to expenses incurred by business interruption. To eliminate any doubt of this Court's position, we hold that the evidence introduced in this condemnation proceeding showing expenses occasioned by business interruption was properly introduced for consideration as to value and weight by the commissioners making the award. [*Grand Haven Hwy*, 357 Mich at 31-32.]

The *Grand Haven Hwy* Court stated that the proof of business interruptions "must not be speculative and must possess a reasonable degree of certainty." *Id.* at 32. The Court then examined the corporation's evidence regarding the costs that it incurred by having to move to a new site. *Id.* at 32-33. The Court disagreed with the state that the corporation's evidence was speculative, noting that the state's own expert had testified that the corporation's management had spent nearly a year engaging " 'in a large-scale project to appraise various means of developing the new plant required by the loss of land to the State,' " and that it had " 'carefully undertaken a program of projecting out-of-pocket costs . . . for making' " the move. *Id.* at 33. The Court then quoted a letter written by the accounting firm hired by the corporation to review its plans for moving its operations: " '[The] accompanying summary of *estimated costs of relocating* the productive facilities of [the corporation] constitutes a reasonable estimate of such costs on the basis of the various assumptions made . . . .' " *Id.* at 34 (emphasis added). By upholding an award based on estimated relocation costs, the *Grand Haven Hwy* Court made clear that a business

owner was entitled to moving and relocation expenses as just compensation as long as those expenses could be shown with a reasonable degree of certainty.

### 4. *DETROIT v HAMTRAMCK COMMUNITY FED CREDIT UNION*

In *Hamtramck Community Fed Credit Union*, 146 Mich App at 157, the city of Detroit condemned the defendant credit union's land, and a jury awarded the credit union $122,000 in business-interruption damages. On appeal, the city argued that the evidence supporting those damages was too speculative and conjectural. *Id*. Citing *Weiden* and *Grand Haven Hwy*, this Court noted that "[i]t has long been held that damages resulting from business interruption are compensable in condemnation cases provided the damages can be proven with a reasonable degree of certainty." *Id*. at 158. The Court then ruled that the proofs introduced to support the credit union's claim for business-interruption damages were not too speculative and conjectural. *Id*. More specifically, this Court explained that the credit union's proofs regarding their business-interruption costs included evidence that it was required to make two moves to relocate the business: once to move to a temporary trailer while a new building was being constructed and then again when it moved into the new building. *Id*. at 159-160. The manager of the credit union testified that "as a result of the double move, the credit union spent substantial sums to relocate to the trailer and then to its new permanent location. These expenses made up the bulk of the claims for business interruption damages." *Id*. at 160. This Court found "no error in the trial court's refusal to strike [the credit union's] claim for business interruption damages." *Id*. at 162-163. Therefore, by acknowledging that the credit union's moving and relocation expenses made up the *bulk* of its claims for business-interruption damages, this Court

confirmed that such costs were, in fact, properly compensable business-interruption damages.

### 5. *STATE HWY COMM v GREAT LAKES EXPRESS CO*

In *Great Lakes Express*, 50 Mich App at 178, the defendant trucking company sought business-interruption damages (as distinct from its claims for fixture damages), arguing that the state's partial taking frustrated a needed expansion of its terminal facilities to such an extent that it was necessary for the defendant to relocate its entire business. This Court did not resolve the issue, but simply held that "[i]t was for the jury to decide whether relocation was necessary in this situation where none of defendant's facilities had been physically damaged by the taking." *Id.* at 178-179. Therefore, this Court again impliedly recognized that moving and relocation expenses fall under the category of business-interruption damages.

### 6. *In re SLUM CLEARANCE*

Despite these cases, MDOT submits that in *Slum Clearance*, the Michigan Supreme Court "answered the question whether the jury should have been allowed to consider as business interruption damages, business losses arising from expenses due to efforts to relocate." MDOT contends that any attempt to seek indirect or consequential damages in the form of moving and relocation expenses is merely a disguised attempt to seek prohibited lost profits. See *Slum Clearance*, 332 Mich at 496 (concluding that the lower court "was not in error in refusing to allow the jury to consider loss of profits as the 'interruption of business' in determining compensation. Loss of profits is speculative, and not a proper element of pecuniary loss or outlay.").

However, contrary to MDOT's interpretation, the appellant in *Slum Clearance* was *not* seeking damages for its actual costs of relocating. Rather, the appellant sought *lost profits* for the time during which it was constructing and relocating to its new building. *Id.* Thus, *Slum Clearance* stands only for the established proposition that lost profits are not compensable as just compensation. *Grand Haven Hwy*, 357 Mich at 31. It does not "answer[] the question" whether a jury should be allowed to consider actual moving and relocation expenses as business-interruption damages. Contrary to MDOT's contention, lost profits are a category of claimed damages distinct from claims for business-interruption damages. Thus, we conclude that claims for business-interruption damages may include actual moving and relocation expenses, exclusive of claims for lost profits.[3]

### 7. *In re ACQUISITION OF LAND FOR CIVIC CTR* AND *In re CONDEMNATION OF LANDS FOR BATTLE CREEK PARK PURPOSES*

MDOT also relies on *In re Acquisition of Land For Civic Ctr*, 335 Mich 528; 56 NW2d 375 (1953), and

---

[3] See *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor & Merrill, Inc*, 267 Mich App 625, 658; 705 NW2d 549 (2005), stating:

Damages resulting from business interruption are compensable in condemnation cases, provided the damages can be proven with a reasonable degree of certainty. But damages related to lost profits are not recoverable in a business interruption case. *The stadium authority does not dispute that relocation costs are proper business interruption damages.* [Emphasis added; citations omitted.]

See also *Detroit v Larned Assoc*, 199 Mich App 36, 42; 501 NW2d 189 (1993), stating:

We hold only that to the extent this case is retried on a business-interruption theory, damages for lost profits will not be allowed. With respect to the remainder of [the] testimony (e.g., that concerning rental expenses, advertising expenses, and the like), the jury was free to either accept or reject it. [Citation omitted.]

*Condemnation for Battle Creek Park*, 341 Mich at 422, to argue that, as opposed to expenses for moving fixtures, just compensation does not require reimbursement for the incidental expenses of moving and relocating personal property. However, we find *Acquisition of Land For Civic Ctr* distinguishable. In that case, the Court did not address the category of damages at issue in this case—business-interruption damages. Further, this Court in *Slum Clearance* established that "trade fixtures" can be distinguished from traditional fixtures that are actually attached or annexed to the land and that trade fixtures include items that might otherwise be considered personal property. *Slum Clearance*, 332 Mich at 493.

In *Slum Clearance*, the appellant electroplating business sought to recover for the cost of moving certain chemical solutions and molten metal as "part of the expense of moving its trade fixtures." *Id.* at 490. The Court acknowledged that the chemical solutions and molten metal were not actually annexed or affixed to the real property and that such attachment was "[o]bviously . . . not . . . possible." *Id.* at 493. But, the Court stated, such actual physical annexation is not a prerequisite to considering the removal of property in determining damages as trade fixtures. *Id.* The Court explained that removal of the chemical solutions and molten metal was essential to the appellant's electroplating business, and, therefore, "they must be considered as trade fixtures, constructively annexed to the real estate." *Id.*

The *Slum Clearance* Court went on to point out that, in other cases, items " 'specially adapted to the full enjoyment of the realty' " were considered as fixtures. *Id.*, quoting *Detroit Trust Co v Detroit City Serv Co*, 262 Mich 14, 30; 247 NW 76 (1933). We note that in *Detroit*

Trust, 262 Mich at 29-30, for example, the Court held that an ice and fuel business's trade fixtures included "ammonia compressors, aerating equipment, boilers, motors and refrigerating units, freezing tanks, air compressors, condensers, engines, oil tanks and pumps, platform scales, scorching machines, . . . other machinery for manufacturing ice[,] . . . spare motors, parts, machinery, [and] equipment . . . ." But the *Detroit Trust* Court notably distinguished these items from horses, wagons, trucks, automobiles, office furniture and equipment, and other movable property, which "are of such a character that they can be transported from place to place without impairing their value . . . ." *Id.* at 31. And we note that in *Colton v Mich Lafayette Bldg Co*, 267 Mich 122, 127; 255 NW 433 (1934), the Court held that the trade fixtures of a company that owned an office building included "repair parts to [sic] elevator switchboard, elevator rugs, window shades, awnings, double doors and trim, base and shoe, red gum partitions, storm doors, elevator uniforms, window curtains, rubber matting, entrance mats, chain falls, Minneapolis thermostats and clock, wall case and mirror, [and] pump tanks for elevator [sic] . . . ." Despite the apparent movable quality of things like uniforms and rugs, the *Colton* Court explained that

> [t]hese articles could not be removed from the building or transported from place to place without impairing their value as well as the value of the building. This building was erected for the purpose of renting stores and offices to the public and in order to be rentable must have various articles or accessories such as those listed above. [*Id.*]

Like the *Detroit Trust* Court, the *Colton* Court went on to clarify that detached equipment and "unused supplies consisting of such articles as paper towels, soap, paint, . . . electric light bulbs, . . . pails, mops, vacuum

cleaners, ladders, [an] electric grinder, [and a] drill press" could not "be classed as fixtures or improvements but are clearly personal property." *Id.*

This body of caselaw distinguishes loss of profits resulting from damages caused by business interruption from expenses incurred by business interruption. *Grand Haven Hwy*, 357 Mich at 31-32; *Slum Clearance*, 332 Mich at 495-497. Only the latter expenses are compensable. The cost of moving trade fixtures constitutes an expense incurred as a result business interruption.

At issue here is whether the trees, bushes, and the like that make up the inventory of a nursery business are trade fixtures. We hold that they are not. A nursery might successfully argue that unattached water pumps, chemical fertilizers, and fertilizing equipment are trade fixtures because they are used to produce or maintain the products of the business, or it might establish that, in operating the business, flower display racks and freestanding counters designed for the space are trade fixtures. Those items, while not necessarily attached to the land or building, could be considered "constructively annexed" to the property because they are intended to be permanent, they would lose value if removed from the building, and they enable and are essential to the business of keeping and selling plant material. *Slum Clearance*, 332 Mich at 493-494. In contrast, Gilling's inventory of trees and bushes are the *products* of the business, they are specifically intended to be sold and removed from the property, and their removal does not impair their value or the value of the property. See *Detroit Trust*, 262 Mich at 30. This moveable inventory does not fall within the definition of a "trade fixture" under any of the aforementioned cases and, because it is more akin to personal property, Gilling was not entitled to recover for the expense of moving inventory.

The trial court should not have ruled that Gilling had the right to recover for the cost of moving inventory in the form of trees, shrubbery, etc. These plants are not trade fixtures. Any losses arising from the movement of the nursery products fall within the category of non-compensable lost profits. We hold that Gilling was entitled to just compensation for its business-interruption damages, which included actual moving and relocation expenses that could be proven with a reasonable degree of certainty,[4] but did not include expenses for the moving of nursery stock.

As discussed later, we remand for a new trial in which MDOT will have the opportunity to present expert testimony concerning the necessity of Gilling's temporary relocation to the interim site before moving to its permanent site in 2007. On remand, the trial court should exclude evidence of the cost of moving the nursery products that made up Gilling's inventory.

### C. SUPPLEMENTAL ADMINISTRATIVE-RECOVERY PROVISIONS

MDOT argues that state and federal statutes exclusively govern recovery for moving and relocation expenses. But our reading of the statutory language, taken in light of the numerous condemnation cases we have previously analyzed, leads us to the conclusion that the administrative-recovery provisions supplement, rather than supplant, a property owner's constitutional right to receive just compensation for moving and relocation expenses as the result of a business interruption.

The act concerning relocation assistance for persons displaced by acquisition of property for highways pro-

---

[4] See *Grand Haven Hwy*, 357 Mich at 32; *Detroit/Wayne Co Stadium*, 267 Mich App at 658.

vides, "Relocation and financial assistance allowed under this act *are independent of and in addition to* compensation for land, buildings or property rights and shall not be the subject of consideration in condemnation proceedings." MCL 252.143 (emphasis added). Similarly, the relocation assistance act provides, "Financial assistance and reimbursement allowed under this act is *independent of and in addition to* compensation for land, buildings or property rights and shall not be considered in condemnation proceedings." MCL 213.328(1) (emphasis added). Additionally, the act concerning allowances for moving personal property from acquired real property provides: "Moving allowances *are independent of and in addition to* compensation for land, buildings or property rights. The cost of moving personal property is not subject to consideration in condemnation proceedings for the acquisition of land, buildings or property rights." MCL 213.355 (emphasis added).

A business owner's right to engage in and continue his or her business has long been recognized as a property right.[5] Thus, each of these statutes makes clear that, while certain moving and relocation expenses are statutorily recoverable in administrative proceedings, those supplemental allowances are "independent of and in addition to" constitutional compensation.

Indeed, as the trial court explained, cases from other jurisdictions interpreting similar administrative-

---

[5] See, e.g., *People v Bennett (After Remand)*, 442 Mich 316, 329 n 17; 501 NW2d 106 (1993) (referring to "private institutions' property rights in conducting their businesses"); *Bay City v State Bd of Tax Admin*, 292 Mich 241, 259; 290 NW 395 (1940) ("The Constitution vests in every citizen the right to engage in business. Such right is a property right and is protected by the Constitution of 1908, art. 2, § 16."); *Glover v Malloska*, 238 Mich 216, 220; 213 NW 107 (1927) ("It would astound the business world to hold that an established business is barren of property rights of a pecuniary nature.").

reimbursement schemes have held that those administrative-reimbursement proceedings were "a *supplementary* scheme of recovery under which . . . funds can be used to reimburse a person displaced from a home, *business*, or farm by a [governmental] . . . project for that person's moving and related expenses where such expenses are not otherwise fully compensable under state condemnation law." *Little*, 100 P3d at 716 (emphasis added). More specifically, the Oklahoma Supreme Court explained in *Little*, 100 P3d at 716-717, that "the relocation assistance acts *are not the exclusive remedy* for reimbursement of moving and related expenses in those jurisdictions where such expenses are recoverable in a condemnation proceeding," stating that

> we find nothing in the [federal Uniform Relocation Assistance and Real Property Acquisition Act (FURA), 42 USC 4601 *et seq.*] to indicate that the administrative scheme it creates was designed to precede resort to the courts. . . . The federal regulations implementing the FURA recognize that compensation made under traditional eminent-domain principles of state law may precede the filing of a FURA claim and, when read in conjunction with [42 USC 4631(b)], implicitly acknowledge that *state law condemnation compensation may include items that would also be compensable under the provisions of the FURA.* [Emphasis added.]

Courts in Florida[6] and Mississippi[7] have reached similar conclusions.

We acknowledge that the administrative-reimbursement provisions state that *statutory* relocation and mov-

---

[6] *Malone*, 438 So 2d at 861 (stating that the FURA "was intended only as a supplementary measure enabling recovery by displaced condemnees of expenses not otherwise compensable under traditional eminent domain principles of state law").

[7] *Rives*, 271 So 2d at 728 (stating that the "legislative intent as expressed in [the Relocation Assistance Program Act], when considered in its entirety, was that the Act would provide compensation for items not previously provable or recoverable as damages in an eminent domain proceeding").

ing allowances "shall not be the subject of consideration in condemnation proceedings." MCL 252.143; see also MCL 213.328(1) and MCL 213.355. But this does not mean that *constitutional* moving and relocation expenses, as business-interruption damages, may not be considered in a condemnation proceeding. As Gilling points out, "no act of the Legislature can take away what the Constitution has given." *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 374; 663 NW2d 436 (2003). Moreover, the UCPA, which "provides standards for the acquisition of property by an agency, the conduct of condemnation actions, and the determination of just compensation," MCL 213.52(1), protects the state from property owners seeking duplicative payments for moving and relocation expenses: "A person is not entitled to a payment in connection with the acquisition of all or part of that person's property under this act if that payment would be duplicative of any grant or other payment received under any state or federal statute or regulation." MCL 213.63a.

Accordingly, we conclude that the trial court did not err by finding that the administrative schemes are not the exclusive remedy for a business owner to recover moving and relocation expenses necessitated by a taking. Michigan cases have repeatedly authorized a business owner to receive business-interruption damages, *including moving and relocation expenses*, as constitutional just compensation.

### IV. EVIDENCE REGARDING PERMANENT SITE

#### A. STANDARD OF REVIEW

MDOT argues that even if the moving and relocation expenses were properly considered as part of just compensation, it was entitled to have just compensation

determined fairly. According to MDOT, the trial court abused its discretion by excluding MDOT's relevant evidence showing that the permanent site to which Gilling ultimately moved was available at the time that Gilling moved to the allegedly unnecessary interim site. MDOT argues that it was improperly denied the opportunity to show that the costs for the second move were avoidable and unnecessary because Gilling could have moved directly to its permanent site.

We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *Barrett v Kirtland Community College*, 245 Mich App 306, 325; 628 NW2d 63 (2001). An abuse of discretion occurs when the trial court's decision results in an outcome falling outside the range of principled outcomes. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

### B. THE BOWMAN TESTIMONY

MDOT asserts that the trial court abused its discretion by precluding the testimony and exhibits of Robert Bowman, a licensed real estate broker and sales agent, who was prepared to testify that Gilling's "permanent" site was available for sale before, during, and after Gilling's move to its interim site. We agree. The trial court's decision to exclude evidence about the availability of the permanent site constituted an abuse of discretion, and MDOT is entitled to a new trial on this basis.

The question whether the permanent site was available when Gilling moved to its interim site was central to the issue of just compensation. Gilling sought expenses for both the interim move and the move to the permanent site. If the permanent site was available at the time that Gilling moved to the interim site, serious doubt would be cast on the reasonableness of Gilling's

decision to temporarily relocate to the interim site before moving to the permanent site. The trial court's expressed concern that the evidence would require the jury to consider the costs and efficacy of Gilling's decision to move to a temporary site missed the point because this is precisely the kind of question the jury should have considered when deciding the extent to which MDOT was obligated to compensate Gilling. Gilling sought more than $500,000 for twice moving the business, and it was, therefore, central to MDOT's case that it have the opportunity to show that at least some of that expense was unwarranted. Moreover, the trial court's ruling deprived MDOT of a vital defense because this evidence might have persuaded the jury that Gilling failed to mitigate its damages when it rented a temporary, but ultimately unsuitable, site while a suitable, permanent location was available. Though Gilling asserts that the permanent site required renovation and rezoning, which would have made it less desirable at the time of the taking, it was for the jury to weigh that evidence against Bowman's testimony to determine how to fairly compensate Gilling for the taking.

The trial court's exclusion of Bowman's evidence substantially prejudiced MDOT's ability to present its case and to present a valid defense to the jury and, thus, undermined the jury's verdict. The trial court's exclusion of MDOT's proposed expert testimony on this vital issue was an abuse of discretion because it unjustifiably robbed MDOT of its most pertinent evidence on a key question of the trial. See *Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 254; 701 NW2d 144 (2005). Therefore, failure to grant a new trial would be inconsistent with substantial justice. MCR 2.613(A). Accordingly, we reverse and remand for a new trial to

allow MDOT to introduce expert testimony on this issue and to ensure substantial justice.[8]

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[8] In Docket No. 287552, MDOT challenges the trial court's postjudgment award of attorney fees. Our holding in Docket No. 285369 obviates the need to address MDOT's argument regarding the trial court's award of attorney fees.