*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLASSIC ANALYTICAL LABORATORIES, LLC,

UNPUBLISHED
August 15, 2025
1:38 PM

Plaintiff-Appellant,

v

No. 369471
Gratiot Circuit Court
LC No. 2023-000586-PD

GREENDOG HOLDINGS, LLC,

Defendant-Appellee.

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition to defendant under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case involves commercial real property in Riverdale (the premises). In August 2021, International Development and Investment Group, Inc. (IDIG) leased the premises from Birnbaum Holdings, LLC (Birnbaum) until August 31, 2023 (the master lease). The master lease provided, "Tenant shall not mortgage, pledge, encumber, assign or sublet or license (for concessions or otherwise) the Premises or in any manner transfer this Lease without prior written consent of Landlord." The master lease also had provisions limiting the alterations that could be made, and establishing that if the tenant held over past the expiration date, it would become a tenant by sufferance. The master lease further provided that "[a]ll property permitted or required to be removed by Tenant at the end of the term that remains in the Premises after Tenant's removal shall be deemed abandoned and may, at the election of Landlord, either be retained as Landlord's property or removed from the Premises by Landlord, at Tenant's expense."

In September 2022, IDIG signed a lease agreement with plaintiff, with IDIG as landlord and plaintiff as tenant, for a portion of the premises. This lease did not mention Birnbaum or the master lease, and it nowhere described itself as a sublease. IDIG did not obtain Birnbaum's consent to enter into this lease, and it did not make plaintiff aware that IDIG was itself a tenant of Birnbaum, subject to its own separate lease. The previous occupant of the premises, 1st Choice

Labs, assigned lab equipment and other "assets" it had left at the premises to plaintiff, who believed that these assets were its personal property.

In January 2023, plaintiff learned of the master lease. In May 2023, Birnbaum commenced an action for possession in the district court against IDIG "and ITS SUBTENANTS Including but not limited to[plaintiff] And How Smooth It Is, Inc." On June 6, 2023, the summons and complaint were served on plaintiff by certified mail. On August 7, 2023, a final settlement conference was held in the district court case. Counsel for plaintiff attended the conference and sought to enter an appearance. Despite apparently being a named party in the case, the district court told plaintiff's counsel that plaintiff was not "a subtenant party to this action" and had not been joined as a party to this case, and that plaintiff lacked standing. Birnbaum, IDIG, and How Smooth It Is, Inc. entered into a consent judgment for possession that was approved by the district court. Although IDIG and How Smooth It Is, Inc. agreed to vacate the premises by August 31, 2023, the consent judgment made no mention of plaintiff, nor did plaintiff's counsel or a representative of plaintiff sign the consent judgment.

Plaintiff and Birnbaum entered into negotiations for plaintiff to purchase the premises. On August 10, 2023, Birnbaum's counsel contacted plaintiff's counsel via email, stating that Birnbaum and plaintiff had reached an agreement regarding the sale and purchase of the premises, and included a proposed purchase agreement for signature. However, plaintiff never signed the purchase agreement. On August 16, 2023, Birnbaum notified plaintiff that it was withdrawing its offer to sell to plaintiff, and that it would not continue negotiations or consider future offers to purchase made by plaintiff. According to plaintiff, plaintiff then attempted to arrange to move its personal property off the premises by August 31. Plaintiff requested that Birnbaum grant it additional time to remove property from the premises. On August 22, 2023, Birnbaum rejected the request, reiterating that August 31, 2023, was the last day for plaintiff to remove personal property. Plaintiff had still not removed personal property from the premises by August 31, 2023.

On September 1, 2023, representatives of plaintiff attempted to remove items from the premises. Birnbaum applied for an eviction order, and, along with local law enforcement, prevented plaintiff from accessing the premises. On September 6, 2023, Birnbaum sold the premises to defendant, a domestic limited-liability company that had been registered on August 30, 2023. On September 7, 2023, the district court signed the order evicting plaintiff from the premises.

On September 18, 2023, plaintiff filed a complaint against defendant in the trial court, alleging claim and delivery, statutory conversion, and common-law conversion. Plaintiff claimed $309,372.60 as the value of the property taken and sought treble damages. In October 2023, plaintiff amended the complaint, listing more property, for a total value of $680,189.65, and still seeking treble damages.

In November 2023, in lieu of an answer, defendant filed a motion for summary disposition, arguing that there was no genuine issue of material fact regarding plaintiff's right to the property at issue. Defendant argued that plaintiff's rights to the property ended on August 31, 2023, when the master lease expired and by when the judgement of possession required tenants to vacate the premises. Defendant also argued that the terms of the master lease provided that any remaining property on the premises became the property of Birnbaum (and subsequently defendant) after

August 31, 2023. In response to defendant's motion, plaintiff filed a five-page response, asserting that discovery and further proceedings would allow plaintiff to uncover evidence showing that defendant and Birnbaum had conspired to deprive plaintiff of its personal property. Plaintiff also argued that the provision of the master lease covering alterations to the property did not apply to the property at issue. And plaintiff argued that the trial court should not grant defendant's request for sanctions. Less than one page of plaintiff's response was devoted to discussing the evidence presented to the trial court by defendant, and that discussion was limited to the argument concerning the alterations provision of the master lease. Plaintiff attached no affidavits or other documentary evidence to its response.

At the hearing, the trial court granted defendant's motion, stating:

I find here that there was a response by way of reply, but there's been no evidence that's been given to this Court on behalf of the plaintiff that would satisfy the burden that would be required. This Court cannot rely on promises that would be produced, or speculations, or thoughts, or theories to a case. The Court has to actually look at evidence and I have not been given any. And so, for that reason, I am going to grant the motion for summary disposition on behalf of the defendant.

On January 4, 2024, the trial court dismissed the case with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

We review "de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). "A motion under Subrule (C)(10) tests the factual support for a party's cause of action." *Cetera v Mileto*, 342 Mich App 441, 447; 995 NW2d 838 (2022). Under MCR 2.116(C)(10), summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When deciding such a motion, the court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). "The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10)." MCR 2.116(G)(5). When the record leaves open an issue upon which reasonable minds could differ, a genuine issue of material fact exists. *Johnson*, 502 Mich at 761. The "adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

We review de novo "questions concerning the proper interpretation and application of statutes, court rules, and rules of evidence." *Donkers v Kovach*, 277 Mich App 366, 369; 745 NW2d 154 (2007). The primary goal when construing a statute "is to give effect to the intent of the Legislature." *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).

## III. ANALYSIS

Plaintiff argues that the trial court erred in several ways when it granted defendant's motion for summary disposition. We disagree.

## A. ALTERATIONS PROVISION

Plaintiff argues that the trial court erred by failing to find that the alterations provision in the master lease supported plaintiff's position and by accordingly denying defendant's motion. Specifically, plaintiff argues that the master lease provided that the property in question was personal property, not alterations or fixtures, and that the trial court erred by failing to address the alterations provision of the master lease. We disagree.

A fixture becomes part of the real property, and therefore title to the fixture as well as the land passes to subsequent owners of the real property. See *Ottaco, Inc v Gauze*, 226 Mich App 646, 650-651; 574 NW2d 393 (1997). "Property is considered to be a fixture if (1) it is annexed to the realty, (2) its adaptation or application to the realty being used is appropriate, and (3) there is an intention to make the property a permanent accession to the realty." *Id*. at 651. "The focus is on the intention of the annexor as manifested by the objective, visible facts, rather than the annexor's subjective intent." *Id*.

> A trade fixture is merely a fixture which has been annexed to leased realty by a lessee for the purpose of enabling him to engage in a business. The trade fixture doctrine permits the lessee, upon the termination of the lease, to remove such a fixture from the lessor's real property.
>
> A trade fixture is considered the personal property of the lessee. A chattel is a trade fixture if devoted to a trade purpose, regardless of its form or size. The question if a given object is a trade fixture is a mixed question of law and fact, which [this Court reviews] de novo on appeal as issues of law. [*Outdoor Sys Advertising, Inc v Korth*, 238 Mich App 664, 667-668; 607 NW2d 729 (1999) (quotation marks and citations omitted).]

When "removal does not impair their value or the value of the property," items are "more akin to personal property" than a fixture. *Dept of Transp v Gilling*, 289 Mich App 219, 238; 796 NW2d 476 (2010).

"Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Id*.

In this case, the master lease provided in relevant part:

All alterations, installed in the Premises at any time, shall, upon installation, become Landlord's property and shall be surrendered with the Premises, unless Landlord, by notice to Tenant prior to the Expiration Date, elects to relinquish

-4-

Landlord's right thereto and to have them removed by Tenant, in which even same shall be removed from by Tenant prior to the expiration the Lease, at Tenant's sole expense. . . . All property permitted or required to be removed by Tenant at the end of the term that remains in the Premises after Tenant's removal shall be deemed abandoned and may, at the election of Landlord, either be retained as Landlord's property or removed from the Premises by Landlord, at Tenant's expense.

Plaintiff directs this Court to *Davidson v Crump Mfg Co*, 99 Mich 501, 503; 58 NW 475 (1894), in which the Michigan Supreme Court held that, "after the expiration of the [lease's] term" the departing tenant "should be permitted to ingress and egress for a reasonable time to remove its property." Therefore, plaintiff argues, because the property at issue was plaintiff's personal property and not alterations or fixtures, it should have been given a reasonable time after the master lease expired to remove it from the premises.

Plaintiff's argument that the master lease favored plaintiff's position is not convincing. Even if the above provision did define the property at issue as personal property rather than alterations or fixtures, plaintiff fails to acknowledge that it was not a party to the master lease, but was rather an unauthorized subtenant. Plaintiff was not an assignee of IDIG's rights under the master lease or otherwise entitled to enforce the provisions of the master lease against defendant. Moreover, the master lease provision clearly indicates that all of the tenant's rights to property on the premises would end at the lease's expiration unless it was removed prior to that time.

Further, *Davidson* is distinguishable from this case. In *Davidson*, the plaintiff was a tenant and party to the lease, which lease had provided that the tenant would be "entitled, at the end of this term, to remove all buildings placed upon said premises." *Davidson*, 99 Mich at 502. The Supreme Court held that this removal clause was crafted to "protect" the tenant's "rights of removal," not "limit" them, and interpreted it to create a reasonable additional period to remove property. *Id*. at 503. The master lease here did not recognize any rights regarding removing property for an unauthorized subtenant such as plaintiff. Moreover, it directed the authorized tenant to "quit and surrender the Premises . . . free from Tenant's trade fixtures, its branding and logos, furniture and equipment," and included the warning that "[a]ll property permitted or required to be removed by Tenant at the end of the term that remains in the Premises after Tenant's removal shall be deemed abandoned and may, at the election of Landlord, either be retained as Landlord's property or removed from the Premises by Landlord." In *Davidson*, the lease had specified the tenant's entitlement to remove certain property. *Davidson*, 99 Mich at 502. The master lease in this case was much less specific about the tenant's entitlements, but did specifically provide that unremoved property would be treated as abandoned and therefore subject to the landlord's retention.

For these reasons, we hold that the trial court did not err by not concluding that the alterations provision in the master lease required it to deny defendant's motion for summary disposition. *Allen*, 281 Mich App at 52.

## B. TENANT BY SUFFERANCE

Plaintiff also argues that the trial court erred by not finding that plaintiff had the status of a tenant by sufferance for the month of September 2023. We disagree.

-5-

A tenant by sufferance, also known as a holdover tenant or an at-will tenant, is a tenant who continues to occupy leased property and pay rent after the term of the lease expires. See *Marks v Corliss'* Estate, 256 Mich 460, 462; 240 NW 71 (1932). Unless the parties make a different agreement, the tenancy of a holdover tenant who had paid monthly rent under the lease will be converted to a month-to-month tenancy terminable by either party with one month's notice. *Id.* at 463. MCL 554.134(1) provides that "[e]xcept as provided otherwise in this section, an estate at will or by sufferance may be terminated by either party by giving 1 month's notice to the other party." MCL 554.134(2) provides that "If a tenant neglects or refuses to pay rent on a lease at will or otherwise, the landlord may terminate the tenancy by giving the tenant a written 7-day notice to quit."

"An assignment of rights occurs when the assignor transfers his or her rights or interests to the assignee." *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 284; 983 NW2d 401 (2022). "[T]he assignee succeeds to the rights of the assignor." *Id*. The rights obtained by the assignee are those possessed by the assignor at the time of assignment. *Id*. at 285.

Plaintiff notes that the master lease provided that IDIG could become a month-to-month tenant after the lease had expired by continuing to occupy, and argues that it acquired those same rights under the master lease. Therefore, according to plaintiff, because it still occupied the premises on September 1, 2023, it should have had the rights of tenant to the premises for at least 30 days after being given notice of termination. We disagree.

The master lease expired on August 31, 2023. At that time, the only entity that could conceivably be a tenant by sufferance was the only named tenant under the master lease, IDIG (which eschewed claiming that status as a consequence of the consent judgment of possession). Under some circumstances, subtenants or assignees of a party to a lease may become tenants by sufferance such that the landlord must provide the statutorily required notice to evict them. See *Felt v Methodist Ed Advance*, 251 Mich 512, 517; 232 NW 178 (1930) ("when a tenant comes rightfully into possession of land by permission of the owner and continues to occupy the same after the time for which, by such permission, he had the right to hold the same, he becomes a tenant by sufferance"). Plaintiff argues that it became an assignee of IDIG's rights under the master lease when it signed the sublease agreement. But plaintiff does not explain how IDIG could assign its rights under the master lease when the master lease itself specifically stated that IDIG "shall not mortgage, pledge, encumber, assign or sublet or license (for concessions or otherwise) the Premises or in any manner transfer this Lease" without the landlord's permission. In other words, whether plaintiff was an unauthorized subtenant or an unauthorized assignee, it did not acquire any rights under the master lease and was not a tenant who came "rightfully into possession of land by permission of the owner." *Felt*, 251 Mich at 517; see *Mecosta Co Med*, 509 Mich at 284; *Riverbend Investors v Progressive Surface Preparation, LLC*, 255 Mich App 327, 335; 660 NW2d 373 (2003). Although it does appear that plaintiff may have been wronged in this situation, plaintiff has not established that any of the fault lies with defendant.[1] In any event, because

---

[1] The record in this case indicates that plaintiff filed suit against Birnbaum in the district court prior to the eviction, and that plaintiff did not agree to substitute defendant for Birnbaum in that case, instead filing this separate case in the circuit court. The record does not reflect the current

plaintiff has not established that it was a tenant by sufferance, the trial court did not err by not declining to treat plaintiff as such.

## C. PREMATURE DISMISSAL

Plaintiff also argues that the trial court erred by dismissing this action before discovery had been conducted. We disagree.

"Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003). "However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Id*. at 25. "If a party opposes a motion for summary disposition on the ground that discovery is incomplete, the party must at least assert that a dispute does indeed exist and support that allegation by some independent evidence." *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). "Mere conjecture does not entitle a party to discovery, because such discovery would be no more than a fishing expedition." *Davis v Detroit*, 269 Mich App 376, 380; 711 NW2d 462 (2005).

Plaintiff argues that its conversion claims rest upon the theory that Birnbaum and defendant intentionally and unlawfully acted to dispossess plaintiff of its personal property. Under plaintiff's theory, Birnbaum saw an opportunity to obtain presumably a higher selling price by offering all of plaintiff's personal property along with the real property, and defendant agreed to such an arrangement despite knowing that it would be unlawfully converting plaintiff's personal property. Birnbaum did act very quickly once plaintiff missed its deadline for moving out, and it did not allow plaintiff inside the premises even though plaintiff was only a day late in retrieving its property. But this alone is not proof of what plaintiff describes. Moreover, the evidence presented at trial indicates that Birnbaum was willing to sell the property to plaintiff on August 10, 2023, but that plaintiff never signed the purchase agreement. And Birnbaum made it clear in its August 16, 2023 withdrawal of its offer to sell that the negotiations were over and that it would not consider any future offers to purchase from plaintiff, and it warned plaintiff, in denying its request for additional time to remove property, that the property needed to be removed by August 31.

There was even less evidence that defendant acted in the way plaintiff suggests. Plaintiff makes much of defendant's being organized as a limited-liability company on August 30, 2023. This timing does suggest that defendant was created in anticipation of buying the subject real property. But the creation of an LLC to purchase commercial property is not at all unusual. Although plaintiff theorizes that Birnbaum and defendant negotiated behind the scenes to purchase the premises and deprive plaintiff of its personal property, and that discovery could have uncovered evidence supporting that theory, plaintiff's theory is mere conjecture. *Davis*, 269 Mich App at

---

status of that case, or whether plaintiff has pursued any claims against IDIG or Birnbaum, and we express no opinion as to the merits of any such claims or potential claims.

380. We therefore hold that the trial court did not err by concluding that this theory did not warrant additional discovery. *Id.*

Affirmed.[2]

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace

---

[2] Plaintiff also argues on appeal that it was not given proper notice of the eviction proceedings against it, and that therefore the district should not have issued the September 7, 2023 eviction order against it. Plaintiff did not raise this issue in the district court or the trial court. We therefore decline to consider it for the first time on appeal. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023).